T.C. Memo. 2010-199

UNITED STATES TAX COURT

WAYNE C. EVANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MADELYN F. EVANS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24498-07, 24510-07.   Filed September 13, 2010.

<u>Kirk A. McCarville</u> and <u>Philip C. Wilson</u>, for petitioners.

<u>Heidi I. Hansen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:   In a notice sent July 27, 2007, respondent
determined deficiencies in petitioners' Federal income taxes for
1995 and 1996 of $70,311 and $196,814, respectively.   Respondent
also determined penalties for fraud under section 6663 of

$52,733.25 and $147,610.50 against Wayne C. Evans (Evans) for 1995 and 1996, respectively. The issues for decision are whether petitioners had unreported income resulting in an underpayment of tax for each year; whether the underpayment of tax for each year was due to fraud on the part of Evans, justifying the penalty and negating the bar of the statute of limitations; whether petitioners are entitled to any deductions not allowed by respondent; and whether Madelyn F. Evans (Ms. Evans) is entitled to relief under section 6015. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated between Evans and respondent, and the stipulated facts are incorporated in our findings by this reference. Ms. Evans declined to stipulate, asserting that she had no knowledge of the relevant facts. She did not contradict any of the facts in the stipulation between Evans and respondent, and the stipulated facts were established with respect to her, pursuant to a motion, order to show cause, and order following the procedures specified in Rule 91. Petitioners resided in Arizona at the time that they filed their petitions. At all material times, they were married to each other and resided together.

From 1986 through the years in issue, petitioners resided on property on West Calle Concordia in Tucson, Arizona (the Concordia property). The Concordia property was purchased by Stephen and Rosalie Olsen (the Olsens) in 1986 and was refinanced in 1989 with a loan of $172,194.71 from Household Finance. Petitioners did not pay rent to the Olsens for their use of the Concordia property, but during 1995 they made payments on the Household Finance mortgage and otherwise to prevent foreclosure on the Concordia property. The sources and amounts of the payments are further described below.

The Farming Authority and Huntington Construction

On August 22, 1995, Evans entered into an agreement with the Tohono O'odham Farming Authority (the Farming Authority) pertaining to Evans' employment as the full-time general manager of the Farming Authority. Evans had oversight responsibility for the approval and disbursement of Farming Authority funds. The agreement provided, among other things, that

> The General Manager shall be responsible for causing the accounts of the Authority to be maintained in accordance with an accounting system established by the Authority's accountant or accounting firm. The records and accounts of the Authority will be available at all reasonable times for inspection and examination by authorized officers of the Authority and the Council. The Board may require special examinations to be made at any time. The General Manager shall arrange for an audit to be made at the close of each business year by a certified accounting firm approved by the Board.

Evans' employment agreement specifically prohibited him from transacting business on the Farming Authority's behalf with any company in which he held a direct or indirect interest. By transacting business with such a company, Evans would have a conflict of interest. Evans' failure to disclose to his employer that he was conducting Farming Authority business with a company in which he had such an interest would be a breach of the fiduciary duty he owed to his employer. Any such conduct by Evans would be grounds for termination.

Huntington Construction, Inc. (Huntington Construction), was an Arizona corporation effectively operated and controlled by Evans during 1995 and 1996. Evans concealed from the Farming Authority his ownership, operation, and control of Huntington Construction. Evans caused 22 checks totaling $449,005 in 1995 and 28 checks totaling $1,148,208 in 1996 to be paid to Huntington Construction from the Farming Authority.

Willie Gilbert (Gilbert) was paid by Evans to sign checks drawn on the Huntington Construction account to conceal Evans' ownership and control of Huntington Construction. Checks were drawn on Huntington Construction's bank account to pay for Willie Gilbert's travel expenses, including one or more trips to Indiana where Gilbert had family. Records were not maintained to substantiate the business purpose of Gilbert's travel. Payments to Gilbert and other persons for services to Huntington

Construction were not reported to the Internal Revenue Service by Huntington Construction.

On September 8, 1997, the Tohono O'odham Nation filed a complaint against Evans, Ms. Evans, Willie Gilbert, Jane Doe Gilbert, Stephen Olsen, Rosalie Olsen, Dawson Riley, Jane Doe Riley, Huntington Construction, Western Pacific Construction, Inc., and Voice of God Recordings, Inc., in the U.S. District Court for the District of Arizona (the District Court) (the civil case).

In June 2000, the civil case was settled with an agreement providing in part that Voice of God Recordings would pay $820,000 to the Tohono O'odham Nation. (Evans had caused the sum of $820,000 to be paid by Huntington Construction to Voice of God Recordings on behalf of petitioners, as further described below.) Ms. Evans was a party to the settlement agreement.

On September 22, 1999, Evans was indicted in the District Court on 18 counts of embezzlement and theft from an Indian tribal organization; theft or bribery concerning programs receiving Federal funds; wire fraud; and frauds and swindles. The first count of the indictment alleged, in part, that

> beginning on or about December, 1994, and continuing through on or about September, 1997, in the District of Arizona, Wayne C. Evans, * * * did embezzle, steal, knowingly convert to his use or the use of another, and did willfully misapply and permit to be misapplied, approximately $1.597 million of the moneys, funds, credits, goods, assets and other property belonging to or intrusted to the custody or care of the Tohono

O'odham Indian Nation, by causing those funds to be paid to himself through use of Huntington Construction, an entity which he secretly and covertly controlled.

On October 12, 2001, an Information was filed in the District Court charging Evans with filing a false tax return for 1996 in violation of section 7206(1). On October 12, 2001, Evans, represented by counsel, entered into a plea agreement in which he pleaded guilty to the first count of the indictment and to the information, specifically admitting facts establishing his guilt beyond a reasonable doubt. The facts admitted included the following:

> Huntington Construction, Inc. was an Arizona corporation. Beginning at least as early as 1985, Wayne C. Evans effectively operated and controlled the affairs of Huntington Construction, Inc.

> Huntington Construction performed work for the Farming Authority while Wayne C. Evans was the Farming Authority's general manager and during the time Evans controlled its affairs. Between March, 1995 and August, 1996, the Farming Authority paid Huntington Construction approximately $1.597 million for work allegedly performed on Farming Authority projects. Wayne C. Evans was responsible for authorizing the payment of those funds. Wayne C. Evans failed to disclose and concealed from the Farming Authority that he effectively owned, operated and controlled Huntington Construction and the funds in its bank accounts while causing Farming Authority funds to be paid to Huntington Construction.

> Once Wayne C. Evans had effected the transfer of funds to Huntington, Wayne C. Evans controlled the use of those funds and used them for personal purposes. Once the funds were deposited to Huntington's bank accounts, Evans concealed his control of those funds by directing third-party nominees to sign checks and make payments from the Huntington accounts.

On or about January 2, 2001, in Tucson, Arizona, Wayne C. Evans filed and subscribed to a joint U.S. Individual Income Tax Return for the calendar year 1996. Wayne C. Evans signed the return under penalties of perjury. The return understated Wayne C. Evans' total income for the 1996 tax year, in that Wayne C. Evans knowingly failed to include the above-mentioned monies from tribal funds during the 1996 calendar year.

A judgment of conviction pursuant to Evans' guilty plea was entered September 12, 2002. Evans was sentenced to 15 months in prison followed by 3 years of supervised release and was ordered to pay restitution of $138,935 to the Tohono O'odham Nation. The restitution amount was arrived at by taking the total amount of money Evans illegally received reduced by the $820,000 Voice of God Recordings paid in settlement of the civil suit.

On three occasions, in 2004, 2008, and 2009, Evans attempted to have the restitution provision in his sentence vacated, but the District Court and the Court of Appeals for the Ninth Circuit held that he was barred by his plea agreement from contesting the sentence.

No income tax return was filed for Huntington Construction for 1995 or 1996. In January 2001, petitioners filed joint individual income tax returns for 1995 and 1996 on which they reported $12,204 and $7,210 of income from Huntington Construction for 1995 and 1996, respectively. Petitioners did not provide bank records reflecting income or expenses or receipts substantiating their expense deductions to their return preparer when the returns were prepared. The returns did not

report all of the income petitioners received as a result of payments from the Farming Authority to Huntington Construction and disbursements from Huntington Construction to or for petitioners.

After examining records of payments made by the Farming Authority to Huntington Construction and checks written on the bank accounts of Huntington Construction, respondent determined that petitioners had unreported income, that certain business expenses and personal itemized deductions were allowable, and that other checks represented payments for the personal benefit of petitioners and constituted taxable income to them.  The personal itemized deductions allowed included charitable contributions to Voice of God Recordings.

Checks drawn on Huntington Construction's account payable to its bank for cashier's checks or for cash totaled $39,760.29 in 1995 and $1,174,555.79 in 1996.

Specific Items of Unreported Income

On May 23, 1995, funds were withdrawn from Huntington Construction's bank account and used to purchase cashier's checks to Voice of God Recordings for $100,000 and to Coots Funeral Home for $5,980.  At the same time, $700 in cash was withdrawn from the account.  Coots Funeral Home provided funeral services for Evans' brother.

On May 23, 1995, funds were withdrawn from the Huntington Construction account to purchase a $2,000 cashier's check payable to Western Pacific Construction, Inc. (Western Pacific). Western Pacific (sometimes referred to in the stipulation of facts as Pacific Western) was an Arizona corporation owned and controlled by petitioners.

On July 26, 1995, funds were withdrawn from the Huntington Construction account to purchase a $16,025 cashier's check payable to the Olsens.

On October 4, 1995, $11,084 was withdrawn from the Huntington Construction account to purchase a vehicle for one of petitioners' children.

On December 14, 1995, funds were withdrawn from the Huntington Construction account to purchase a $1,500 cashier's check payable to the widow of Evans' brother.

On January 30, 1996, funds were withdrawn from the Huntington Construction account to purchase a $159,422.79 cashier's check payable to Household Finance to be applied to the mortgage on the Concordia property. In conjunction with the payment, the Concordia property was transferred from the Olsens to the Campo Bello Irrevocable Trust. Petitioners are the grantors of the Campo Bello Irrevocable Trust and, along with their children, are the beneficiaries of the trust.

On August 15, 1996, funds were withdrawn from the Huntington Construction account to purchase two $1,000 cashier's checks used to pay personal debts of petitioners.

In September 1996, funds were withdrawn from the Huntington Construction account to purchase $820,000 and $70,000 cashier's checks payable to Voice of God Recordings on behalf of petitioners.

During 1995 and 1996, Western Pacific received income totaling $83,009.92 and $7,603.12. Certain of the income was received from the Farming Authority, and much of it was received from Huntington Construction. No income tax returns were filed for Western Pacific, and petitioners did not include any income from Western Pacific on their return for 1995 or 1996.

On February 1, 1995, funds totaling $26,756.54 were withdrawn from Western Pacific's bank account to make payments by or on behalf of petitioners to prevent a foreclosure on the Concordia property. During the years in issue, 43 checks written on Western Pacific's bank account were payable to petitioners or members of their family or to cash. Ms. Evans signed most of the checks written on the Western Pacific account.

Ms. Evans' Liability

Petitioners' Federal tax returns for 1995 and 1996 were filed in January 2001. Ms. Evans was aware of Evans' indictment and arrest at the time that she signed the joint returns, and she

knew or should have known of the underreporting of income and understatement of taxes on those returns. She signed checks on the Western Pacific account by which that corporation's income was distributed to petitioners or to members of their family; she knew or should have known that such income had not been reported by Western Pacific or by petitioners on their returns. She received the benefits of the unreported income and the resulting underpayment of taxes to the same extent as Evans.

OPINION

Respondent relies on section 6501(c)(1) as a defense to petitioners' assertion of the bar of the statute of limitations and, therefore, must prove that petitioners' 1995 and 1996 tax returns were false or fraudulent with the intent to evade tax. Because the question of fraud is determinative as to the statutory period of limitations as well as the penalty under section 6663 against Evans, we first discuss the evidence and our conclusions with respect to fraud. Respondent has not alleged fraud by Ms. Evans. However, proof of fraud against either spouse prevents the running of the period of limitations as to both spouses with respect to the income tax deficiencies on joint returns. Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972).

The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the

revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. 99, 102 (1999). The Commissioner has the burden of proving, by clear and convincing evidence, an underpayment for each year in issue and that some part of the underpayment for each of those years is due to fraud. Sec. 7454(a); Rule 142(b). If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to a 75-percent penalty, unless the taxpayer establishes that some part of the underpayment is not attributable to fraud. Sec. 6663(a) and (b). The Commissioner must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud will never be presumed. Id.; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available. Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). The taxpayer's entire course of conduct may establish the requisite fraudulent intent.

Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including the consistent understatement of income, inadequate records, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Dealing in cash is also considered a "badge of fraud" by the courts because it is indicative of a taxpayer's attempt to avoid scrutiny of his finances. See id. at 308. Additional "badges of fraud" include handling one's affairs to avoid making the records usually made in transactions of the kind. Spies v. United States, 317 U.S. 492, 499 (1943). Evidence of fraud also includes a taxpayer's use of a business entity to cloak the personal nature of expenses. See Romer v. Commissioner, T.C. Memo. 2001-168.

Although Evans' conviction for subscribing a false Federal tax return does not collaterally estop him from denying that he fraudulently understated petitioners' income tax liability, his conviction is evidence of fraudulent intent. See Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Evans contends that he entered into the plea agreement solely to protect Ms. Evans in the face of a threat that she might be arrested. The details alleged in the counts of which he was convicted and admitted in

the plea agreement are specific and convincing evidence of fraud, and he has not raised any doubt that the facts admitted are accurate. His motivation in entering into the plea agreement is irrelevant and in no way undermines the reliability of the overwhelming evidence of unreported income accompanied by other badges of fraud.

Petitioners also contend that the amounts paid to Huntington Construction from the Farming Authority were for work before the time that Evans became general manager and that, therefore, those amounts were not embezzled from the Farming Authority in breach of his duties. Whether petitioners' business performed services for the Farming Authority before the time that Evans became the general manager is irrelevant in this case. The payments received by Huntington Construction and used for petitioners' personal purposes during the years in issue were income to them during those years. The failure to report that income resulted in underpayments of taxes and is clear and convincing evidence of fraud.

Respondent has thus shown by clear and convincing evidence that petitioners received unreported income during each of the years in issue, at least in the amounts withdrawn from Huntington Construction and Western Pacific as set forth in our findings. Once the receipt of income is shown it is petitioners' burden to come forward with explanations of why receipts are not taxable or

of offsetting deductions.  See, e.g., Brooks v. Commissioner, 82 T.C. 413, 432-433 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).  Respondent does not have the burden of disproving petitioners' entitlement to deductions, even in a criminal case where the Government bears a heavier burden of proof.  See, e.g., Elwert v. United States, 231 F.2d 928, 933-936 (9th Cir. 1956).

Petitioners did not produce any records to substantiate their business expenses.  Under the circumstances, we are entitled to infer that they did not maintain required records or that any records that were maintained would be unfavorable to their claims.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners suggest that respondent had a burden to show that "Evans possessed a requisite amount of education and business experience or sophistication to keep such records."  Although a taxpayer's education and experience may be considered in determining intent, we are satisfied that the complicated scheme engaged in by Evans is clear and convincing evidence that he had the "requisite * * * business experience or sophistication" and that he knew that records are required to substantiate deductions.  Under the management agreement with the Farming Authority, Evans was to maintain records and accounts, among

other duties.  Thus his failure to keep or to produce records may be regarded as concealment.

Evans admitted in the plea agreement that he concealed his ownership of Huntington Construction from the Farming Authority. Petitioners argue that disguising assets or embezzlement, standing alone, does not establish intent to evade taxes.  These facts taken together with other badges of fraud, however, are clear and convincing evidence of fraudulent intent.

Respondent refers to the untimely filing of petitioners' tax returns as evidence of fraud.  Petitioners argue that late filing, as contrasted with failure to file, is not indicative of fraud.  The returns in this case, however, were filed after disclosure of Evans' criminal conduct in misappropriating funds. Returns were not filed for the entities through which the misappropriated funds were channeled to petitioners.  Under these circumstances, we agree with respondent.

The evidence is clear and convincing that petitioners dealt in large amounts of cash during the years in issue. Petitioners' response is to point to the paper trail on which respondent relies; petitioners assert that the paper trail negates fraudulent intent.  Again the evidence must be considered in the context of the total factual record.  That petitioners' schemes were discovered because they did not successfully hide all potential evidence is not an exonerating factor.  Even if some

portion of the cash was used for business expenses, the "handling of one's affairs to avoid making the records usual in transactions of the kind" has long been recognized as a badge of fraud. Spies v. United States, 317 U.S. at 499-500; see Bradford v. Commissioner, 796 F.2d at 308.

Another badge of fraud in this case is the record of implausible and inconsistent explanations of behavior. Evans attempts to explain away his guilty plea and plea agreement as intended to protect his wife from arrest. He has not shown that the facts admitted in the plea agreement are inaccurate. He attempts to minimize his wrongful conduct toward the Farming Authority by asserting that funds were owed to Huntington Construction prior to his employment as general manager, but the receipt of $1.597 million in 1995 and 1996 calls for more than a generalized assertion that it was due before mid-1995. By the nature of the claim, corroborating documentary or witness evidence should have been available. Because such evidence was not produced, a negative inference again may be drawn. See Wichita Terminal Elevator Co. v. Commissioner, supra at 1165. In any event, the failure to report the income, regardless of the legality or illegality of its source, is the key element in this case.

Disallowed Deductions

As a general rule, with respect to the amounts of the deficiencies in issue, the taxpayer bears the burden of proof. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133. That burden may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1). However, section 7491(a)(1) applies with respect to an issue only if the taxpayer has complied with the requirements under the Code to substantiate any item, has maintained all records required by the Code, and has cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B). For the reasons discussed above, petitioners' evidence is unreliable, and their claims are unsubstantiated. They have not satisfied the conditions for shifting the burden of proof to respondent.

The deductions in dispute are identified by a list of checks that Evans generally claimed were business expenses of Huntington Construction, including travel expenses, vehicle expenses, and meals expenses that were not substantiated in accordance with section 274(d). Some disputed payments were made to petitioners'

sons.  Evans' testimony was not corroborated by records or other testimony, and none of the witnesses could identify specific services petitioners' sons performed during 1995 or 1996.  Evans professed a lack of recollection with respect to many of the payments.  His testimony asserting that certain payments related to loan transactions was not supported by any documentation of loans received or repaid.  Testimony concerning attorney's fees was not supported by evidence establishing that the fees were business expenses rather than personal nondeductible expenses, such as fees relating to the criminal case.  Business-related litigation referred to during the testimony apparently occurred 5 or more years before the years in issue.

Many of the items that Evans asserted were business related were inherently personal, and the record of diversion of business income to pay personal expenses undermines the credibility of the generalized assertions of business purpose.  The failure to keep adequate records, the use of cash, the absence of tax returns for Huntington Construction and Western Pacific, the failure to turn over records to petitioners' return preparer, and the implausible claims together render the uncorroborated testimony unreliable. Petitioners have not shown any error in the deficiency determinations for 1995 and 1996.

Respondent has proven that the fraud penalty applies, and petitioners have not established that any part of the

underpayments was not attributable to fraud. See sec. 6663(b). Respondent is not barred from assessing petitioners' 1995 and 1996 tax deficiencies. The penalty under section 6663 will be upheld.

## Section 6015 Relief

Ms. Evans asserted in her petition a claim for relief from joint and several liability for 1995 and 1996 under section 6015. She does not qualify for relief under section 6015(c) because petitioners were married and living together at all material times. Relief under section 6015(b) requires that she establish that in signing the return she did not know, and had no reason to know, that there was an understatement of tax attributable to items of Evans. See sec. 6015(b)(1)(C). Under either section 6015(b)(1)(D) or (f), she must show that taking into account all of the facts and circumstances, it is inequitable to hold her liable for the deficiencies.

At trial, Ms. Evans testified that she did not know anything about her husband's activities giving rise to an understatement of tax for each year, although she signed many of the checks by which funds were diverted to pay petitioners' personal expenses. We are not persuaded that she did not know or have reason to know of the understatements. At the time she signed the tax returns, she knew that Evans was being prosecuted for misappropriation of funds. As far as the record reflects, the unreported income was

used by petitioners equally, and she has suggested no particular facts that would support a conclusion of inequity in holding her liable.  It is not inequitable to hold her liable for the deficiencies on the joint returns.  We need not, therefore, discuss the additional factors generally considered in determining entitlement to relief under section 6015.

We have considered the other arguments of the parties.  They are irrelevant to our decision or lack merit justifying discussion.  To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.