T.C. Memo. 2012-32

UNITED STATES TAX COURT

PAUL R. AVENELL AND DAIA AVENELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26452-07.              Filed February 2, 2012.

<u>Lawrence W. Sherlock</u>, <u>Renesha N. Fountain</u>, and <u>Dianne C. Mehany</u>, for petitioners.

<u>M. Kathryn Bellis</u>, <u>Ashley Vaughan Targac</u>, and <u>Randall G. Durfee</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in petitioner Paul Avenell's individual Federal income tax return for 1992 and in petitioners' joint Federal income tax return for 1993.[1]  Respondent determined that petitioner[2] was liable for an addition to tax under section 6651(a)(1) for failure to file a return timely (late filing) for 1992 and that petitioners were liable for a late-filing addition to tax for 1993.  Respondent also determined that petitioner is liable for the fraud penalty under section 6663 for 1992 and 1993 (the years at issue).[3]

The primary issue is whether respondent has proven by clear and convincing evidence that petitioner is liable for the fraud penalty for the years at issue.  We hold that he has not.  We therefore need not decide other issues relating to the deficiencies and additions to tax because the limitations period for assessment has expired.

---

[1]The parties stipulated in a Stipulation of Settled Issues that Daia Avenell is not liable for the fraud penalty and is entitled to relief under sec. 6015(b) from any income tax liability determined to be due from petitioners for 1993.

[2]For convenience, we refer to Mr. Avenell as petitioner.

[3]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## FINDINGS OF FACT

The parties have stipulated some facts. We incorporate the stipulation of facts, supplemental stipulation of facts, second supplemental stipulation of facts and accompanying exhibits by this reference. Petitioners resided in Houston, Texas when they filed the petition.

Petitioner started work in the air conditioning business after graduating from high school in 1961. He then maintained radar systems on fighter planes in the Air Force for a while before returning to the air conditioning business as a technician. Petitioner established a commercial heating and air conditioning business called Tacon Mechanical Contractors, Inc. (Tacon) in 1973. During the years at issue, he was president of and owned at least 96 percent of Tacon.

Tacon was sued by one of its subcontractors, Grant Sheet Metal (Grant Metal), in 1986. Tacon had subcontracted certain fabrication and duct work installation to Grant Metal and had fired Grant Metal when it failed to adequately staff the projects. Grant Metal then sued Tacon for breach of contract and other causes. The case was tried in 1992 and the jury awarded Grant Metal actual damages, exemplary damages and fees.

Petitioner was furious about the lawsuit and felt that Grant Metal had been awarded double the contract amount despite its poor work performance. Petitioner

appealed the judgment. He also acted upon his attorney's advice to file for chapter 11 bankruptcy protection and to keep funds out of Tacon's bank account. Specifically, petitioner did not deposit payments from general contractors to Tacon during the years at issue. Instead, he exchanged the checks for cashier's checks that he carried in his back pocket to protect his funds from Grant Metal's judgment collection.

Petitioner used the cashier's checks to pay Tacon's expenses, subcontractors and suppliers. He deposited some of the cashier's checks into a Cayman Islands bank account [4] and he lent money to a friend's company. He relied, knowing little about bookkeeping and having only a high school degree, upon Tacon's bookkeepers to track the funds. Petitioner thought that his bookkeepers kept such records and that almost all funds kept in the Cayman Islands account and lent to his friend were returned to Tacon.

---

[4]Petitioner had learned about high-interest-paying bank accounts in the Cayman Islands during a weekend trip sponsored by an equipment supplier. Petitioner had not previously traveled to the Cayman Islands. During his short visit, he saw an advertisement inviting hotel guests to a seminar about Cayman Islands bank accounts and, when attending, was told that he could earn at least 20 percent interest on a deposit.

The tax return that petitioner filed for 1992 and the joint tax return that petitioners filed for 1993 were both prepared by an accountant. In 1996 petitioner filed an amended tax return for 1993 reporting additional income.

IRS Special Agent Buddy Adams (Mr. Adams) began investigating petitioner in the mid-1990s based on small-town rumors of drug dealing and large property purchases. Mr. Adams continued his investigation, despite finding no basis for the drug allegations. He discovered during his investigation that petitioner's son had purchased a rural property in Sequin, Texas in 1993 (Sequin residence). That same year, a ranch was purchased in Guadalupe County, Texas (Guadalupe ranch) in the name of petitioner's lawyer's company.

When questioned, petitioner told Mr. Adams that he helped his son with the Sequin residence purchase and that he purchased the Guadalupe ranch. Petitioner voluntarily disclosed the Cayman Islands bank account. Mr. Adams traced cashier's checks to petitioner's personal use and concluded that petitioner used general contractors' payments to Tacon to purchase the Guadalupe ranch.

In 2000 petitioner pled guilty to filing a false tax return for 1993. He did so based on his attorney's warning that Mr. Adams said he would indict petitioner's family members, bookkeeper and accountant if petitioner did not accept the plea.

Respondent issued the deficiency notices approximately 13 years after the years at issue. Respondent determined that petitioner was liable for a $48,723 fraud penalty for 1992 and a $224,322[5] fraud penalty for 1993. Respondent also determined additions to tax for failure to timely file a return.

Petitioners timely filed a petition.

## OPINION

Respondent argues that petitioners underreported income when petitioner diverted funds from Tacon for his personal use and that the resulting underpayment of tax is attributable to fraud. Petitioners argue that petitioner did not intend to evade tax but instead attempted to safeguard company funds from judgment collection. Petitioners further note that the deficiencies were determined after the period expired for assessing tax absent fraud. See sec. 6501. We agree with petitioners. Respondent has failed to show by clear and convincing evidence that any of the underpayment of tax for either of the years at issue was due to fraud.

We now address fraud. Fraud is an intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), aff'g T.C. Memo.

---

[5]Dollar amounts are rounded to the nearest dollar.

1966-81; Di Ricco v. Commissioner, T.C. Memo. 2009-300. Petitioner's guilty plea under section 7206(1) does not prove fraud, but rather respondent must show that petitioner intended to evade tax in filing the returns. See Wright v. Commissioner, 84 T.C. 636, 643 (1985). Respondent bears this burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), aff'g T.C. Memo. 1984-25. This high standard precludes the presumption of correctness that generally attaches to a deficiency determination from extending to a fraud determination. See Smith v. Commissioner, 926 F.2d 1470, 1474-1475 (6th Cir. 1991), aff'g 91 T.C. 1049 (1988); Di Ricco v. Commissioner, supra.

Fraud is never presumed and must be affirmatively established by clear and convincing evidence. See, e.g., Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. at 1123; Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). Mere suspicion, however, is not enough. Katz v. Commissioner, 90 T.C. 1130, 1144

(1988); Shaw v. Commissioner, 27 T.C. 561, 569-570 (1956), aff'd, 252 F.2d 681 (6th Cir. 1958).

Respondent did not establish by clear and convincing evidence that petitioner fraudulently intended to evade tax. See sec. 7454(a); Rule 142(b). Respondent had more than 13 years to build a case against petitioner before issuing the deficiency notices, and another 3 years to prepare for trial after petitioners filed the petition. Yet respondent did not provide sufficient evidence to establish that petitioner acted with the intent to evade tax.

Respondent infers that petitioner intended to evade taxes by exchanging general contractor's checks for cashier's checks and using those funds for personal purposes, including making a personal loan and opening a Cayman Islands bank account. Respondent further infers fraudulent intent from petitioner's purchases of real estate in others' names. Piling inference upon inference, however, does not qualify as clear and convincing evidence. See Penn-Ohio Steel Corp. v. Commissioner, T.C. Memo. 1964-124 (quoting Goldberg v. Commissioner, 239 F.2d 316, 320 (5th Cir.1956), rev'g T.C. Memo.1954–242). His inferences fall short of the required proof of fraud by clear and convincing evidence. We cannot conclude that petitioner's delusive behavior was part of a deliberate scheme of fraudulent tax evasion.

We find that petitioner's diversion of money from Tacon was done with the intent to evade judgment collection, rather than the intent to evade taxes. Petitioner treated Tacon's assets and funds as his own. Tacon's assets were subject to a judgment collection that petitioner felt was unjust. Petitioner credibly testified that he refused to deposit funds into Tacon's account to avoid the judgment collection. The timing of petitioner's delusive behavior involving cashier's checks, the Cayman Islands bank account, real property purchases and the personal loan is consistent with that of Grant Metal's judgment. We do not condone petitioner's efforts to avoid judgment collection. We also do not find, however, that his actions were done with the intent to evade tax.

Petitioner's liberties with Tacon's funds may have resulted in underreported income. A taxpayer's failure to report income does not, by itself, establish fraudulent intent. See Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir.1977), aff'g T.C. Memo. 1975-368; Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992); Pappas v. Commissioner, T.C. Memo. 1981-639. Petitioner credibly testified that he thought he could use Tacon's funds because he had previously put money into Tacon. Given his limited education and relevant expertise, he did not understand that Tacon was a separate entity and that Tacon's funds were different and separate from his own. Despite petitioner's erroneous

understanding of corporate and tax laws, spending company funds for personal use is not per se fraudulent. See Knutsen-Rowell, Inc. v. Commissioner, T.C. Memo. 2011-65. We find that petitioner's actions stemmed from an intent to avoid judgment collection coupled with a lack of sophistication about and attention to legal obligations and financial details.

We note that petitioner cooperated with Mr. Adams throughout the investigation. He voluntarily disclosed the Cayman Islands bank account and admitted that he lent company money to a friend. He further disclosed that he helped his son purchase the Sequin residence and that he purchased the Guadalupe ranch. Petitioner's cooperation with respondent during the audit suggests that he was not attempting to evade Federal tax.

Again, we do not condone his cavalier use of corporate income. We disagree, however, with respondent's position that it was part of a conscious and clever scheme to avoid Federal income taxes.

Nearly two decades after the years at issue, we hold that respondent has failed to prove by clear and convincing evidence that petitioner fraudulently intended to evade tax. Our conclusion is based on the record as a whole, taking into account our determination as to the credibility of petitioner and the other

witnesses called at trial.  Accordingly, the statute of limitations bars the assessment of tax, additions to tax and penalties for the years at issue.[6]

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for

petitioners.

---

[6]The parties stipulated that petitioners are not entitled to the long-term capital loss of $100,385 claimed on the return for 1993 pertaining to the Guadalupe ranch. The statute of limitations bars the assessment of this additional tax.