T.C. Memo. 2014-18

UNITED STATES TAX COURT

JOHN M. POTTER, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10730-12.                    Filed January 27, 2014.

<u>Stephen J. Dunn</u>, for petitioner.

<u>John W. Stevens</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent)
determined deficiencies, additions to tax, and penalties in the following amounts
with respect to petitioner's individual Federal income tax liabilities for the tax
years 2002, 2003, 2004, and 2005:

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Fraud penalty sec. 6663 |
|------|-----------|-------------------------------|------------------------|
| 2002 | $94,214 | $23,554 | $70,661 |
| 2003 | 25,093 | 3,764 | 69,363 |
| 2004 | --- | --- | 44,099 |
| 2005 | 74,369 | --- | 55,777 |

Because petitioner does not dispute the amounts of the proposed deficiencies, the principal issue for decision is whether petitioner is liable for the fraud penalty under section 6663 for each of the years at issue.[1]  We must also determine whether petitioner is liable for additions to tax under section 6651(a)(1) for 2002 and 2003.

## Background

This case was submitted fully stipulated under Rule 122.  The stipulated facts and related exhibits are incorporated herein by this reference.  When he filed his petition, petitioner resided in Michigan.

Petitioner owned and operated a "gentlemen's club," Potter's Pub, Inc., during the tax years at issue.  Potter's Pub was a cash-based business that derived

---

[1]All statutory references are to the Internal Revenue Code as in effect for the tax years at issue.  All rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

[*3] receipts from food and drink charges run through the cash register, door cover charges, juke box moneys, pool table receipts, and moneys paid to the pub by the dancers for the privilege of "dancing." Petitioner was the president and sole owner of Potter's Pub. For each year at issue he filed, and signed as president, a Form 1120, U.S. Corporation Income Tax Return, for Potter's Pub. Those returns reported losses for 2002 and 2003 and zero taxable income for 2004 and 2005.

Petitioner filed an individual income tax return for each year at issue, but his returns for 2002 and 2003 were untimely. For 2002 petitioner's Form 1040, U.S. Individual Income Tax Return, was signed by him on March 1, 2004, and received by respondent on April 26, 2004. For 2003 petitioner's Form 1040 was signed by him and his return preparer on December 31, 2004, and received by respondent on February 7, 2005. Petitioner reported on his individual returns no wages, dividends, or other income from Potter's Pub for any of the years at issue.

In December 2006 IRS special agents engaged in an undercover investigation of Potter's Pub, posing as buyers interested in acquiring the business. Petitioner assured the agents that Potter's Pub was much more profitable than it appeared. He explained that he deposited in the corporate account only enough of the business revenues to cover its expenses and that he wired the balance of its revenues to his personal bank account in Florida. These wire transfers were

[*4] structured in amounts less than $10,000 to avoid reporting obligations by the bank to the IRS.[2] In reality, petitioner told the agents, Potter's Pub grossed more than $1 million annually and he took home between $400,000 and $520,000 each year. Petitioner showed the agents clandestine sales ledgers for 2003 and 2004 that supported the gross receipts he claimed, acknowledging that it might have been unwise to maintain documentary evidence of his skimming.

During a subsequent search of Potter's Pub, IRS agents seized upwards of $200,000 in cash and obtained the set of clandestine sales ledgers that tracked its daily receipts. These ledgers confirmed that Potter's Pub's annual receipts for 2002-05 were vastly in excess of the amounts that petitioner had reported to the IRS. The difference between its actual gross receipts and the gross receipts reported on the company's Forms 1120 for those years exceeded $2 million.

After the search of Potter's Pub, when he knew he was under criminal investigation, petitioner provided his accountant additional bank account information for the 2003-05 tax years. His accountant used this information to file amended Federal income tax returns for those years, both for Potter's Pub and for

---

[2]Federal law requires financial institutions to report currency transactions in excess of $10,000 as well as multiple currency transactions that aggregate more than $10,000 in a single day. These transactions are reported to the IRS on Currency Transaction Reports. See 31 C.F.R. sec. 103.22 (2000).

[*5] petitioner individually. (Petitioner did not file amended returns for himself or for Potter's Pub for 2002.) The IRS assessed additional income tax and additions to tax on the basis of the amounts shown on the amended returns for 2003-05.

In January 2009 petitioner was criminally charged with eight counts under section 7206(1) and (2) for making and subscribing false tax returns, and for assisting in the preparation of false tax returns, for himself and Potter's Pub. In May 2009 petitioner pleaded guilty to one count of making and subscribing a false Form 1120 on behalf of Potter's Pub for 2002. Pursuant to his plea, petitioner was sentenced to 18 months' prison time and supervised release for one year. He was also ordered to pay restitution of $400,000.

In the factual basis for his guilty plea, petitioner admitted under penalties of perjury that he willfully submitted false tax returns for Potter's Pub for the 2002-05 tax years; that he did not believe those returns to be true and correct as to every material matter; and that he had falsely subscribed those returns with the specific intent to violate the law. During his criminal sentencing petitioner stated: "I admitted I falsified my returns and so forth, and it [has] caused me a lot of problems."

In April 2009 petitioner signed, in his capacity as president and sole owner of Potter's Pub, a Form 870, Waiver of Restrictions on Assessment and Collection

**[\*6]** of Deficiency in Tax and Acceptance of Overassessment. He thereby agreed that, for tax years 2002-05, Potter's Pub was liable for tax deficiencies (in addition to those previously collected) in excess of $340,000 and for fraud penalties under section 6663 in excess of $250,000.

## Discussion

### A.    Fraud Penalty

"If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the underpayment due to fraud. Respondent has the burden of proving fraud, and he must prove it by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Richardson v. Commissioner, 509 F.3d 736, 743 (6th Cir. 2007), aff'g T.C. Memo. 2006-69. To sustain his burden, respondent must establish two elements: (1) that there was some underpayment of tax for each taxable year at issue; and (2) that at least some portion of the underpayment for each year was due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).

If a fraud penalty is sought for multiple tax years, respondent's burden of proving fraud "applies separately for each of the years." Vanover v. Commissioner, T.C. Memo. 2012-79, 103 T.C.M. (CCH) 1418, 1420 (quoting Temple v. Commissioner, T.C. Memo. 2000-337, aff'd, 62 Fed. Appx. 605 (6th Cir. 2003)).

[*7] If respondent proves that a portion of an underpayment is attributable to fraud for a particular year, then "the entire underpayment shall be treated as attributable to fraud" unless the taxpayer shows, by a preponderance of the evidence, that some portion was not so attributable. Sec. 6663(b).

Petitioner has conceded the first element of the fraud penalty, namely, that he underpaid his individual income tax liability for each tax year at issue. Petitioner has stipulated the amounts of unreported income determined by respondent for 2002-05 as well as the tax deficiency for each year. We accordingly turn to the second element of the penalty, fraudulent intent.[3]

Fraud is intentional wrongdoing designed to evade tax believed to be owing. Neely v. Commissioner, 116 T.C. 79, 86 (2001). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Fraud is not to be presumed or based upon mere suspicion. Petzoldt v. Commissioner, 92 T.C. 661, 699-700

---

[3]Although petitioner stipulated the correctness of the amounts respondent determined as tax deficiencies for 2002-05, he contends that assessment of these amounts is barred by the three-year period of limitations in sec. 6501(a). Because we conclude that petitioner's underpayments were due to fraud, there is no period of limitations, and the tax for 2002-05 "may be assessed * * * at any time." Sec. 6501(c)(1). Respondent has advanced alternative theories of liability as to the applicable period of limitations. Because we hold that all of petitioner's underpayments were attributable to fraud, we need not address these alternative arguments.

[*8] (1989).  However, because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. Grossman v. Commissioner, 182 F.3d 275, 277-78 (4th Cir. 1999), aff'g T.C. Memo. 1996-452.  Respondent satisfies his burden of proof by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes."  Parks v. Commissioner, 94 T.C. 654, 661 (1990).  The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may be inferred from a pattern of conduct.  Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81; Stone v. Commissioner, 56 T.C. 213, 224 (1971).

Circumstances that may indicate fraudulent intent, commonly referred to as "badges of fraud," include but are not limited to:  (1) understating income; (2) maintaining inadequate records; (3) giving implausible or inconsistent explanations of behavior; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to one's tax preparer; (8) lack of credibility of the taxpayer's testimony; (9) filing false documents, including false income tax returns; (10) failing to file tax returns; and (11) dealing in cash.  Spies v. United

[*9] States, 317 U.S. 492, 499 (1943); Morse v. Commissioner, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, aff'd, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive; however, the existence of several factors "is persuasive circumstantial evidence of fraud." Vanover v. Commissioner, 103 T.C.M. (CCH) at 1420-1421.

Some factors have no application here. For example, because this case was submitted fully stipulated, petitioner had no occasion to testify and his credibility cannot be evaluated. Other factors may be regarded as neutral. After thorough review of the record, we conclude on balance that the "badges of fraud" overwhelmingly demonstrate that petitioner acted with fraudulent intent for each tax year at issue.

1.    Understating Income

A pattern of substantially underreporting income for multiple years is strong evidence of fraud, particularly if the understatements are not satisfactorily explained. Vanover v. Commissioner, 103 T.C.M. (CCH) at 1421. Petitioner admitted in his 2009 guilty plea that he substantially underreported the income of Potter's Pub for 2002-05. He underreported this income both to evade the corporate-level income tax and to conceal the fact that he was skimming hundreds

**[*10]** of thousands of dollars of corporate income annually into his personal bank account.

Petitioner has likewise stipulated that, for each year at issue, he substantially underreported his own income on his Forms 1040. Petitioner reported no income whatsoever from Potters's Pub for these years. By omitting the income he skimmed from Potter's Pub and reporting no dividends, wages, or other income from his business, petitioner substantially understated his income for each year at issue.[4] He has not provided a satisfactory explanation of the understatements; rather, petitioner has acknowledged that he intentionally underreported his income. This factor weighs heavily in favor of finding fraudulent intent.

### 2. Maintaining Inadequate Records

Fraudulent intent can be inferred from a failure to maintain adequate books and records, including the maintenance of false books and records. See Ark. Oil & Gas, Inc. v. Commissioner, T.C. Memo. 1994-497, 68 T.C.M. (CCH) 887, 891. The records that petitioner maintained, for himself and Potter's Pub, were both

---

[4]On audit respondent determined no deficiency for 2004 on the basis of petitioner's amended 2004 return and smaller deficiencies for 2003 and 2005 on the basis of petitioner's amended returns for those years. In ascertaining whether petitioner had fraudulent intent, however, we consider his behavior when he filed his original returns. See Vanover v. Commissioner, 103 T.C.M. (CCH) at 1423. Petitioner's original returns substantially understated his income for all four years.

[*11] inadequate and fraudulent.  Petitioner kept two sets of books, including clandestine sales ledgers, designed to hide corporate income and conceal the fact that he was skimming massive amounts of cash into his personal bank account.  This double bookkeeping provides clear circumstantial evidence of fraudulent intent.  See Spies, 317 U.S. at 499; Medlin v. Commissioner, T.C. Memo. 2003-224, aff'd, 138 Fed. Appx. 298 (11th Cir. 2005).

       3.     Concealing Income or Assets

A willful attempt to evade tax may be inferred from a taxpayer's concealment of income or assets.  Spies, 317 U.S. at 499.  Petitioner concealed Potter's Pub's income by maintaining two sets of books.  He concealed his own income, which he skimmed from Potter's Pub, by wiring cash to his personal bank account.  The amounts he wired were kept below $10,000 in order to avoid bank reporting to the IRS.  This pattern of structuring bank deposits is clearly emblematic of an intent to conceal income.  See McClellan v. Commissioner, T.C. Memo. 2013-251, at *27-*28.  By systematically manipulating both his business and personal income, petitioner was able to accumulate substantial assets (including cash) that he likewise concealed.

**[*12]** 4.    Providing Incomplete or Misleading Information

Evidence that a taxpayer provided incomplete or misleading information to his return preparer is further circumstantial evidence of fraud.  Morse v. Commissioner, 419 F.3d at 833; Vanover v. Commissioner, 103 T.C.M. (CCH) at 1042.  A taxpayer acts fraudulently when he conceals income from his return preparer.  See Korecky v. Commissioner, 781 F.2d 1566 (11th Cir. 1986), aff'g T.C. Memo. 1985-63.

Petitioner provided his accountant with an initial set of books and records that was used to prepare false individual and corporate tax returns.  For each tax year at issue, petitioner concealed from his accountant the secret sales ledgers that recorded Potter's Pub's actual gross receipts.  Petitioner stipulated that "at the time * * * [he] subscribed or assisted in the preparation of his personal * * * federal income tax returns [for the years at issue], he knew that Potter's Pub, Inc. was not reporting all of its gross revenues."

After the search of his establishment, petitioner provided his accountant with bank records that were used to prepare and file amended tax returns for 2003-05.  Once a fraudulent return has been submitted, however, subsequent conduct, such as filing amended returns, does not purge the original fraudulent conduct.  Badaracco v. Commissioner, 464 U.S. 386, 393-394 (1984).  Thus, petitioner's

[*13] initial acts of supplying false records to his return preparer for 2002-05 constitute clear evidence of his fraudulent intent.

### 5. Filing False Income Tax Returns

Petitioner has stipulated that the income reported on his individual income tax returns for 2002-05 was understated. This is primarily because petitioner did not report any dividend, wage, or other income from Potter's Pub on his individual returns, even though he knew large amounts of such income existed. He thus filed a false individual income tax return for each year.

Petitioner also filed a false corporate tax return for each year. Petitioner pleaded guilty under section 7206(1) to one count of filing a false income tax return on behalf of Potter's Pub for 2002. In his plea agreement he admitted that he likewise filed false income tax returns on behalf of Potter's Pub for 2003-05. Petitioner was the sole owner of Potter's Pub and thus the sole beneficiary of its income. As its president, he exercised complete control over it. By filing false returns for Potter's Pub, petitioner attempted to conceal the fact that he was weekly skimming thousands of dollars from his business. Considering the overall pattern of petitioner's behavior, his filing of false returns for Potter's Pub furnishes additional circumstantial evidence of fraudulent intent with respect to his individual returns for these years.

[*14] 6.    Extensive Dealings in Cash

Extensive dealings in cash are a badge of fraud because they are indicative of a taxpayer's attempt to conceal income and avoid scrutiny of his finances.  See Evans v. Commissioner, T.C. Memo. 2010-199, 100 T.C.M. (CCH) 215, 218, aff'd, 507 Fed. Appx. 645 (9th Cir. 2013).  Fraudulent intent may be inferred when a taxpayer handles his affairs in a manner designed "to avoid making the records usual in transactions of the kind."  Spies, 317 U.S. at 499.

As a "gentlemen's club," petitioner's business was a cash-based operation.  Its sales receipts were derived principally from food and drink charges run through the cash register, door cover charges, juke box moneys, pool table receipts, and moneys paid to him by the dancers for the privilege of "dancing."  Petitioner admitted that he weekly wired large amounts of this cash to his personal bank account in Florida.  These wire transfers were invariably made in amounts less than $10,000 in order to avoid detection.  During the search of Potter's Pub Federal agents seized more than $200,000 in cash from the premises.  Although conducting a cash business does not necessarily prove fraud, "[w]hen coupled with attempts to conceal transactions or avoid the requirement of reporting cash transactions, it becomes more probative."  Valbrun v. Commissioner, T.C. Memo. 2004-242, 88 T.C.M. (CCH) 385, 387.

[*15] Petitioner contends that he lacked fraudulent intent because he is uneducated and unsophisticated and had to hire tax professionals to file his personal and corporate tax returns. Petitioner's lack of education and sophistication is irrelevant. In this context the tax laws he violated are not esoteric. Petitioner knowingly concealed more than $2 million in business gross receipts in an effort to evade tax he knew to be owing. He was sophisticated enough to structure his wire transfers in amounts under $10,000 in the hope of escaping bank reporting to the IRS. And he knowingly failed to provide his tax professional with the clandestine sales ledgers that he personally prepared and which he knew recorded the actual receipts of his business.

Petitioner asserts that he "went to extraordinary lengths to cooperate with the Government." But he began to cooperate only after he knew that the jig was up. It was only after the search of his business turned up the illicit sales ledgers and $200,000 in unexplained cash that petitioner provided his accountant with the books and records needed to prepare amended returns. These efforts may have helped petitioner in his negotiations with the Department of Justice in his criminal

**[*16]** tax case. But they do not purge the fraudulent intent that accompanied the original filing of his false individual tax returns for 2002-05.[5]

Finally, petitioner contends that restitution payments he has made to the United States must be credited against any tax deficiencies and penalties sustained in this case. According to petitioner, respondent received $124,348 from the sale of his New Orleans residence and approximately $335,000 from the sale of Potter's Pub. He contends that he has never received "an accounting of his restitution payments."

The amounts of restitution, if any, that petitioner made after filing his original tax returns have no bearing on the issues currently before the Court-- namely, the tax deficiencies and penalties for which petitioner is liable for the tax years 2002-05. That is not to say that petitioner will not receive credit, when respondent proceeds to collect the tax liabilities sustained in this case, for any restitution payments he has made that have not been previously accounted for.

---

[5]Petitioner errs in relying on <u>Avenell v. Commissioner</u>, T.C. Memo. 2012-32, 103 T.C.M. (CCH) 1180. In that case the taxpayer deposited payments due his corporation into his personal bank account. In concluding that the Commissioner failed to prove fraud by clear and convincing evidence, we relied on the taxpayer's cooperation with authorities (including his voluntary disclosure of an offshore bank account) and his credible testimony that his actions stemmed, not from an intent to evade tax, but from an intent to shield his company's assets from judgment collection. <u>See</u> <u>id.</u>, 103 T.C.M. (CCH) at 1181-1182.

**[\*17]** But such collection matters are generally not within our jurisdiction in a deficiency proceeding commenced under section 6213(a). See Abdallah v. Commissioner, T.C. Memo. 2013-279, at \*32-\*34.

B.      Section 6651(a)(1) Additions to Tax

Respondent assessed late-filing additions to tax under section 6651(a)(1) for 2002 and 2003. Petitioner's Forms 1040 for both years were indisputably filed late. He did not file his 2002 return until April 26, 2004, and he did not file his 2003 return until February 7, 2005. Petitioner in his briefs did not address the late-filing additions to tax, and we deem this issue conceded. See, e.g., Gmelin v. Commissioner, T.C. Memo. 1988-338, 55 T.C.M. (CCH) 1410, 1421 n.19 (finding one of the Commissioner's arguments to have been abandoned when he failed to address it on brief), aff'd without published opinion, 891 F.2d 280 (3d Cir. 1989).

C.      Conclusion

For the reasons set forth above, we conclude that respondent has established by clear and convincing evidence that petitioner's underpayments of tax were attributable to fraud for the taxable years 2002-05. Petitioner has failed to submit credible evidence showing that any portions of these underpayments were not due to fraud. Accordingly, we hold that petitioner is liable for the tax deficiencies and

**[*18]** section 6663 civil fraud penalties for 2002-05, and for the section

6651(a)(1) late-filing additions to tax for 2002 and 2003.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.