T.C. Memo. 2014-193

UNITED STATES TAX COURT

VLADIMIR ROUDAKOV, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21000-11.                          Filed September 23, 2014.

Vladimir Roudakov, pro se.

<u>Marie E. Small</u> and <u>Monica E. Koch</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's

Federal income tax and fraud penalties as follows:

|  | | Penalty |
| [*2] | | |
| Year | Deficiency | sec. 6663[1] |
| 1995 | $83,766 | $62,825 |
| 1996 | 220,627 | 165,470 |
| 1997 | 29,622 | 22,217 |

[1]Amounts have been rounded to the nearest dollar.

After concessions, the issues for decision are:

(1)  Whether petitioner omitted $240,969, $571,274, and $94,395 of gross receipts from his taxable income for 1995, 1996, and 1997, respectively.  We find that he failed to report gross receipts to the extent discussed below.

(2)  Whether petitioner had deficiencies in income tax for 1995, 1996, and 1997 in the amounts determined in the notice of deficiency.  We hold that he had deficiencies to the extent discussed below.

(3) Whether petitioner is liable for the fraud penalty under section 6663 for 1995, 1996, and 1997.  We hold that he is.

Section references are to the Internal Revenue Code as in effect during the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                          FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  Petitioner was a resident of New York when the petition was filed.

A.  Early Years (Pre-1995)

Petitioner is from Ukraine, where he and some other members of his family had been in business with some financial success.  Petitioner and his wife have a daughter and a son.  Petitioner and his family immigrated to the United States around 1990.

Petitioner lived in Philadelphia from 1990 to 1999.  He lived in a one-bedroom apartment with his wife and two children until 1994.  Petitioner's mother came to the United States in 1994.  After she arrived, petitioner, his wife, the two children, and his mother lived in a two-bedroom apartment.  Petitioner and his family struggled financially during the years after they came to the United States, and they lived frugally.  From 1990 to 1994 petitioner at times worked in a gas station and in a one-hour photo shop and drove a taxi cab.

B.  Petitioner's Computer Business From 1995 Through 1997

In late 1994 petitioner began to buy laptop computers wholesale for resale to laptop computer retailers.  He operated this business under the name "Payless

**[*4]** Computer Source" (Payless). He continued this business until around 1998 when it ceased to be profitable.

1. Computer Purchases

Petitioner traveled throughout the United States to attend computer auctions to buy discounted computers from various suppliers. For example, petitioner attended auctions in California and Maryland.

Petitioner bought some computers which were being discounted by the manufacturer or other seller. Sometimes computers he bought at auction were packaged in broken or opened boxes and were sold as is. To assist with reselling computers, petitioner learned to repair and rebuild computers.

In 1996 petitioner bought a previously leased 1996 Toyota van to transport laptop computers from his numerous wholesale sources and to deliver them to retailers. He continued to own and drive this vehicle at the time of trial.

Petitioner purchased some computers from Advanced Marketing Services in Philadelphia. He paid for those computers by check. It was very unusual for petitioner to pay for computers by check. Typically he purchased computers from wholesalers (e.g., at auctions) who did not know him, and these sellers required that he pay in cash.

**[*5]**   Petitioner rarely took family members when he went to buy computers, but sometimes he took one or more family members if he planned to stay in a hotel. For example, family members accompanied him on trips to attend auctions in Washington, D.C., and Ocean City, Maryland, during the years in issue.

   2.  Petitioner's Sales of Computers

During the years in issue petitioner brought the laptop computers to Philadelphia and resold them to several retailers in New York City and New Jersey. To find buyers he contacted stores that sold laptop computers.  Sometimes he simply drove to stores selling laptop computers and offered his computers for sale.

There were large numbers of buyers and sellers of laptop computers during those years.  Prevailing prices were well understood from widely available sources such as computer magazines.  Petitioner typically sold computers for about a 5% to 6% profit.  Petitioner believed that it was crucial to promptly resell computers he had purchased because retail prices of computers sometimes declined over time.  A low markup helped him to quickly resell computers that he had purchased and obtain repeat business from retail outlets.  Sometimes his profit was less than 5% if, for example, boxes had been opened or damaged.

**[*6]** 3. Mellon Bank Account

Payless maintained a bank account with Mellon Bank (Mellon account) in Philadelphia.  Petitioner routinely deposited checks Payless received from its vendors into the Mellon account.  The cumulative amounts of check deposits to the Mellon account were $125,817, $365,523, and $435,820 for 1995, 1996, and 1997, respectively.  Throughout 1995 and 1996 petitioner frequently wrote checks from the Mellon account, often for several thousand dollars, to Advanced Marketing Services in Philadelphia for computer purchases.  From mid-1996 through 1997 petitioner wrote many checks for cash on the Mellon account.

4. Petitioner's Use of Cash

Petitioner paid cash for computers he bought at auctions.  He never paid for computers he bought at auctions by check or credit card.  Thus, he took substantial amounts of cash to the auctions.  Retailers paid by check for computers they purchased from petitioner.  At his request, petitioner typically received checks in amounts less than $10,000 even if it required the buyer to issue more than one check on a particular day.  He deposited some of the checks in the Mellon account and cashed some at K&A Check Cashing Service (K&A) in Philadelphia.  Petitioner cashed checks at K&A in the following total amounts:

| [*7]<br>Year | Total checks<br>cashed | Amount |
|------|------|------|
| 1995 | 39 | $275,486 |
| 1996 | 74 | 542,448 |
| 1997 | 11 | 92,145 |
| Total | 124 | 910,079 |

5. Business Expenses

Petitioner tried to minimize his business expenses. After some of his inventory was stolen in 1995, he kept his inventory in public storage. He paid $60 a month for a storage space beginning sometime in 1995.

C. Petitioner's Tax Returns for 1995, 1996, and 1997

Petitioner timely filed his Federal income tax returns, Form 1040, U.S. Individual Income Tax Return, for tax years 1995, 1996, and 1997. Friedman Accounting Services prepared petitioner's tax returns using information he supplied, including income and expense summary statements for his computer sales business.

On Schedules C, Profit or Loss From Business, attached to each tax return for the years in issue petitioner identified his principal business as "computer distribution and sales" and listed his business name as "Payless Computer Sales". He reported the following on those Schedules C:

| [*8] Year | Gross receipts | Cost of goods sold | Other expenses | Net profit |
|-----------|----------------|--------------------|----------------|------------|
| 1995 | $143,963 | $112,692 | $14,650 | $16,621 |
| 1996 | 336,391 | 299,559 | 18,805 | 18,027 |
| 1997 | 435,820 | 396,135 | 21,798 | 17,887 |

The 1995 tax return was filed unsigned by petitioner.  Petitioner signed both the 1996 and 1997 tax returns.

D.  Respondent's Examination of Petitioner's Tax Returns

The IRS began investigating petitioner's tax returns in 1998 because of a discrepancy between a Form 4789, Currency Transaction Report, the IRS had received from K&A and what was reported on petitioner's tax returns.[1]  Revenue Agent Cynthia Jackson (RA Jackson), a tax compliance officer, investigated petitioner's returns.  Upon review of currency transaction reports (CTR) that had been produced by K&A, RA Jackson concluded that there were additional gross receipts for Payless that petitioner had not reported on his tax returns.  RA Jackson requested from petitioner his bank statements, workpapers used to prepare his 1995, 1996, and 1997 income tax returns, and any other data that would assist the

---

[1]Under 31 U.S.C. sec. 5313(a) (2006) financial institutions are required to file a currency transaction report (CTR) involving cash transactions in excess of $10,000.  K&A filed the CTRs with the IRS because K&A believed that petitioner's transactions were suspect.

**[*9]** IRS in reconciling his reported gross receipts and cost of goods sold. Petitioner provided no records or documents to RA Jackson.

RA Jackson referred petitioner's case to the Criminal Investigation Division (CID) of the IRS. CID agents contacted individuals who had written checks to petitioner. The CID also obtained the Mellon account records and performed a deposits analysis of that account. On the basis of the analysis of petitioner's Mellon account deposits and the CTRs from K&A, respondent's agents concluded that petitioner had omitted gross receipts from his computer sales business of $240,969, $571,274, and $94,395 for 1995, 1996, and 1997, respectively.

After the criminal conviction, petitioner's case was returned to RA Jackson. She prepared the notice of deficiency for petitioner's 1995, 1996, and 1997 tax years.

E. Petitioner's Criminal Conviction

Petitioner was indicted in the U.S. District Court for the Eastern District of Pennsylvania on two counts of willfully filing false tax returns under section 7206 for tax years 2006 and 2007. The indictment charged petitioner with filing tax returns on which he had reported gross receipts on Schedule C of $336,391 for 1996 when he knew his gross receipts were approximately $907,665; and of

**[*10]** $435,820 for 1997, when he knew his gross receipts were approximately $530,215. On February 9, 2004, a jury found petitioner guilty on both counts.

OPINION

A. <u>Burden of Proof</u>

Taxpayers generally bear the burden of proving that the Commissioner's determination in a notice of deficiency is incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933).[2]

The Court of Appeals for the Second Circuit, to which this case is appealable, <u>see</u> sec. 7482(b)(1)(A), has recognized an exception to the presumption of correctness by requiring the Commissioner in unreported income cases to provide evidence linking the taxpayer with a source of income. <u>See</u> <u>Llorente v. Commissioner</u>, 649 F.2d 152, 156 (2d Cir. 1981), <u>aff'g in part, rev'g in part and remanding</u> 74 T.C. 260 (1980). Petitioner clearly is linked to the unreported income. Petitioner operated a computer reselling business and received payments from retail purchasers of computers. Accordingly, respondent has satisfied his burden of providing evidence linking petitioner to the unreported income.

---

[2]If various conditions are met, the burden of proof can shift to the Commissioner under sec. 7491(a). Petitioner does not contend those conditions have been met here, and it is apparent from the record they have not been met.

**[*11]** B.  Unreported Income From Checks Cashed at K&A

Respondent alleges petitioner omitted gross receipts in the following amounts from Schedules C filed with his 1995, 1996, and 1997 income tax returns:

| Year | Omitted gross income |
|------|----------------------|
| 1995 | $240,969 |
| 1996 | 571,274 |
| 1997 | 94,395 |
| Total | 906,638 |

If a taxpayer does not maintain adequate books and records, the Commissioner may reconstruct the taxpayer's income by any reasonable method which clearly reflects income, sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954), including the bank deposits method, Parks v. Commissioner, 94 T.C. 654, 658 (1990); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977), and currency transaction reports, Testa v. Commissioner, T.C. Memo. 1989-556.  Petitioner provided no books or records to respondent.  Accordingly, respondent reasonably relied upon bank records and the CTRs that K&A submitted to determine petitioner's unreported income.

Petitioner contends that his friend, Alexander Rason, operated a computer sales business under a business name similar to his and received some of the proceeds from the checks cashed at K&A, causing confusion about who received

**[*12]** cash from checks at K&A. Petitioner also disputes the testimony of Jonathan Gershkow, the owner of K&A, that only petitioner received the proceeds of the checks he cashed at K&A, on the grounds that there is no photographic evidence of petitioner's cashing checks and that the amounts cashed are in doubt because K&A had a corporate address separate from its business location.

We disagree. We found credible the testimony of Jonathan Gershkow that only petitioner received the proceeds of checks payable to Payless. Petitioner did not assist respondent in finding Mr. Rason, and Mr. Rason did not testify at the trial of this case or of petitioner's criminal case.[3] Petitioner has not convinced us that he did not receive cash from checks cashed at K&A payable to Payless in the amounts that Jonathan Gershkow described. We find that petitioner cashed checks at K&A for $542,448 and $92,145 for 1996 and 1997, respectively.[4] We therefore find that petitioner underreported his gross receipts by $542,448 and $92,145 for 1996 and

---

[3]Petitioner offered no explanation for failing to assist respondent in finding Mr. Rason or for the absence of Mr. Rason at his trial.

[4]Respondent asserts that petitioner's unreported income is wholly attributable to checks he cashed at K&A. However, the record reflects that the total amounts of checks cashed at K&A during 1996 and 1997 are less than the amounts of unreported income respondent determined for those years in the notice of deficiency. There is nothing in the record to reconcile the larger amounts appearing in the notice of deficiency.

[*13] 1997, respectively. We also find that petitioner underreported his gross receipts for 1995 by $240,969 as respondent determined in the notice of deficiency.[5]

C.    Whether Petitioner Has Deficiencies in the Amounts Determined in the Notice of Deficiency

Petitioner did not provide contemporaneous records of his costs of goods sold or expenses. However, petitioner testified that his profit on computer sales typically was about 5% to 6%; that it was sometimes less; and that he used substantial amounts of cash to buy computers at auctions. We found this aspect of his testimony to be credible. This profit rate is similar to the overall net profit of approximately 6% that he reported on his tax returns and that was based on the revenues he deposited in the Mellon Bank, as shown in the following table:

|  | 1995 | 1996 | 1997 | Total | Profit Percentages |
|---|---|---|---|---|---|
| Sales | $143,963 | $336,391 | $435,820 | 916,174 | |
| COGS | 112,692 | 299,559 | 396,135 | 808,386 | |
| GP | 31,271 | 36,832 | 39,685 | 107,788 | 11.77% |
| Other expenses | 14,650 | 18,805 | 21,798 | 55,253 | |
| Net income | 16,621 | 18,027 | 17,887 | 52,535 | 5.73% |

---

[5]While the record shows that the value of checks petitioner cashed at K&A during 1995 exceeded this amount, respondent has not asserted that petitioner had any more unreported income than the amount determined in respondent's notice of deficiency. We deem that respondent has conceded this issue.

[*14] When a taxpayer establishes that he or she incurred a deductible business expense but does not prove the precise amount of the expense, the Court may approximate the amount allowable, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). For the Cohan rule to apply, the Court must have some basis for estimating the amount of the expense. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Petitioner's testimony provides an adequate basis for us to approximate costs of goods sold and expenses for Payless attributable to sale proceeds not deposited in the Mellon account and instead received as cash.[6]

On the basis of the foregoing, we find that petitioner's income is understated by the amounts of gross receipts that we found above in the Discussion at part B.

---

[6]There is evidence in the record that petitioner acquired valuable artwork during better times for his family before he came to the United States and that the artwork was later stolen. There also is some suggestion in the record that petitioner received around or somewhat more than $100,000 in family money around the time his mother moved to the United States, that he invested that money, and that the money was substantially lost. In respondent's posttrial opening brief, respondent points out that on the Schedule D, Capital Gains and Losses, included with petitioner's 1997 tax return, he reported selling short-term capital assets for $2,588,199 and that those assets had a cost basis of $2,690,718. There is no explanation in the record for this item reported on his 1997 return, and it is not apparent how, if at all, it relates to the circumstances referred to in this footnote. Respondent alleges no source of unreported income for petitioner for 1995-97 other than from checks cashed at K&A, and we have included no factfinding or discussion relating to these points.

[*15] Further, on the basis of the record before us and bearing heavily against petitioner, who failed to provide contemporaneous business records, we assume petitioner had an overall net profit percentage of 10%,[7] as shown in the following table:

| Year | Gross receipts as reported | Adjusted gross receipts | Net income as reported | Adjusted net income |
|------|---------------------------|-------------------------|------------------------|---------------------|
| 1995 | $143,963 | $384,932 | 16,621 | $38,493 |
| 1996 | 336,391 | 878,839 | 18,027 | 87,884 |
| 1997 | 435,820 | 527,965 | 17,887 | 52,797 |

Accordingly, we find that petitioner understated his profit from operating Payless to the extent the adjusted net income amounts stated above exceed the net income amounts he reported on his tax returns for 1995, 1996, and 1997.

D.  Whether Petitioner Is Liable for the Penalty for Fraud Under Section 6663(a)

With respect to the section 6663 penalty, respondent has the burden of proving fraud by clear and convincing evidence.  See 7454(a); Rule 142(b).

---

[7]We recognize petitioner failed to report sales proceeds along with the cost of purchasing the goods for unreported sales.  We believe there are some additional deductible business expenses associated with the unreported sales that were never reported either.  Consequently, the overall net profit percentage we use is weighted more toward the overall gross profit percentage of 11.77% that petitioner reported on his tax returns.

**[\*16]** 1.  Background

Respondent contends that petitioner is liable for the penalty for fraud under section 6663(a) for 1995, 1996, and 1997.  Respondent must establish that: (a) petitioner underpaid tax for each year in issue and (b) some part of the underpayment is due to fraud.  See 6653(b); Parks v. Commissioner, 94 T.C. at 660-661; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989).  We found in part C of the Discussion that petitioner underpaid tax for 1995, 1996, and 1997.  If respondent shows that any part of an underpayment is due to fraud, the entire underpayment is treated as due to fraud unless petitioner shows by a preponderance of the evidence that part of the underpayment is not due to fraud.  See 6663(b).

Fraud is the intentional evasion of a tax believed to be owing.  Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. Fraud is never presumed; it must be established by affirmative evidence.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  The Commissioner may prove fraud by circumstantial evidence because direct evidence of the taxpayer's intent is rarely available.  See Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984).

**[*17]** 2.  Badges of Fraud

Courts have developed several objective indicators, or "badges", of fraud. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  The following badges of fraud are present in this case as to petitioner for the years in issue:  (1) substantial amounts of unreported income over several years; (2) inadequate books and records; (3) dealing in large amounts of cash; and (4) concealment of income or assets.  See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601.  Another badge of fraud, filing false income tax returns, is present with respect to 1996 and 1997.  See Spies v. United States, 317 U.S. 492, 499 (1943); Potter v. Commissioner, T.C. Memo. 2014-18, at *13; Laciny v. Commissioner, T.C. Memo. 2013-107, at *17-*20.

    a.  Substantial Underreported Income

A pattern of substantially underreporting income for several years is strong evidence of fraud.  Holland, 348 U.S. at 137-139; Spies, 317 U.S. at 499. Petitioner substantially underreported his income for 1995, 1996, and 1997.

    b.  Inadequate Books and Records

A taxpayer's failure to maintain accurate records or concealment of records may be a badge of fraud.  Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), aff'g T.C. Memo. 1959-172; Reaves v. Commissioner, 295 F.2d 336, 338

**[*18]** (5th Cir. 1961), aff'g 31 T.C. 690 (1958); Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980). Petitioner never supplied any books and records to respondent during the examination or for purposes of this case.

### c. Dealing in Large Amounts of Cash

A taxpayer's use of cash to conceal income is evidence of fraud. Bradford v. Commissioner, 796 F.2d at 307-308. Petitioner's computer resale business dealt almost exclusively in cash. He cashed checks between 1995 and 1997 in the cumulative amount of $910,079 and purchased computers for resale using cash.

### d. Concealment of Income

Attempts to conceal income from the Internal Revenue Service by negotiating checks for less than $10,000 are an indicia of fraud. See Gandy v. Commissioner, T.C. Memo. 1997-532, aff'd, 199 F.3d 440 (5th Cir. 1999). During each of the years at issue petitioner cashed a large number of checks at K&A in amounts less than $10,000. When a sale exceeded $10,000 petitioner even requested that the purchaser issue more than one check so that no check exceeded $10,000. Such purposeful behavior is an indication petitioner was attempting to conceal income and it is an indicia of fraudulent intent.

**[*19]**        e. <u>Criminal Conviction for Filing False Tax Returns</u>

Petitioner was found guilty of violating section 7206(1) for the taxable years 1996 and 1997. Section 7206(1) makes it a crime for a taxpayer to willfully make and submit any return verified by a written declaration that it is made under the penalties of perjury which he does not believe to be true and correct as to every material matter. <u>Wright v. Commissioner</u>, 84 T.C. 636, 639 (1985). While not dispositive on the issue of fraud, petitioner's conviction is a factor we may consider relevant. <u>See</u> <u>id.</u> at 633-644. The Supreme Court has defined "willfully", as used in section 7206(1), as "a voluntary, intentional violation of a known legal duty." <u>United States v. Pomponio</u>, 429 U.S. 10, 12 (1976). We think petitioner's intentional filing of false tax returns for 1996 and 1997 is an indication that he had fraudulent intent with respect to those tax years.

3. <u>Conclusion</u>

We conclude that respondent has proven by clear and convincing evidence that petitioner fraudulently underpaid tax for 1995, 1996, and 1997.

To reflect the foregoing and the concessions of respondent,

<u>Decision will be entered under</u>

<u>Rule 155</u>.