T.C. Memo. 2016-107

UNITED STATES TAX COURT

JAMES A. ERICSON AND REBECCA A. ERICSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25648-12.                          Filed June 1, 2016.

James A. Ericson, pro se.

Jonathan J. Ono, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge:  Petitioners petitioned the Court to redetermine respondent's

determinations relating to petitioners' Federal income tax for 2006 through 2008

[*2] (years at issue). Respondent determined the following deficiencies, addition to tax under section 6651(a)(1),[1] and fraud penalties under section 6663:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6663 |
|------|-----------|-------------------------------|-------------------|
| 2006 | $43,576 | $11,052 | $32,040 |
| 2007 | 30,851 | -0- | 19,980 |
| 2008 | 39,999 | -0- | 28,099 |

Respondent determined as an alternative to the fraud penalty for 2008 that petitioners were liable for an accuracy-related penalty under section 6662(a) for negligence, or alternatively, for a substantial understatement of income tax.

Respondent concedes that the assessment periods for 2006 and 2007 are closed to the extent that we find that the fraud penalties do not apply for those years. As discussed infra, we find that a fraud penalty does not apply for any year at issue. We therefore do not discuss further respondent's adjustments for 2006 and 2007, other than to the extent that they relate to respondent's determinations of fraud for those years. Because our analysis of respondent's fraud determinations for the years at issue takes into account our analysis of respondent's nonfraud

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the years at issue, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded.

[*3] determinations for 2008, for clarity we defer our analysis of respondent's fraud determinations until the end of this opinion.

The issues that we decide are as follows:

1.  whether petitioners failed to report $5,552 of sole proprietorship income for 2008.  We hold that they did;

2.  whether petitioners may deduct the $92,564 of sole proprietorship expenses in dispute for 2008.  We hold that they may not;

3.  whether petitioners may deduct the $3,816 of employee business expenses in dispute for 2008.  We hold that they may not; and

4.  whether petitioners are liable for the fraud (or alternatively the accuracy-related) penalties that respondent determined.  We hold that petitioners are not liable for the fraud penalties but are liable for the accuracy-related penalty determined for 2008.

FINDINGS OF FACT

I.    Preliminaries

The parties stipulated certain facts and exhibits.  We find the stipulated facts accordingly, and we incorporate those facts herein.  Petitioners are husband and wife, and they resided in Hawaii when their timely petition was filed.  They filed a joint Form 1040, U.S. Individual Income Tax Return, for each year at issue.

**[*4]** II.    Mrs. Ericson

Mrs. Ericson was employed part time during the years at issue as a registered nurse.  She also operated a sole proprietorship that primarily manufactured and sold fashion jewelry.  Her sole proprietorship secondarily bought and sold clothes during 2006 and 2007 and manufactured and sold notions during 2008.  She generally sold her merchandise on eBay, and she had no cash sales.

Petitioners did not keep a formal set of books for, or retain receipts underlying the expenses of, Mrs. Ericson's sole proprietorship (or Mr. Ericson's sole proprietorship discussed infra).  Mr. Ericson periodically looked at petitioners' bank and credit card statements and characterized (but did not separately record) for Federal income tax purposes each expense shown on the statements.

III.    Mr. Ericson

A.    Background

Mr. Ericson earned a bachelor's degree in business and a master's degree.  During the years at issue, he operated a sole proprietorship in Hawaii and conducted three activities through the business.  One activity was providing accounting services, which consisted almost entirely of preparing income tax returns.  Another activity was taking and selling photographs.  The remaining activity was selling certain merchandise.  Mr. Ericson generally devoted most of

[*5] his time during January through May to preparing tax returns, and he generally devoted most of his time during the rest of the year to his photography activity.

### B.     Mr. Ericson's Return Preparer Activity

At the time of trial, Mr. Ericson had operated a tax-related business for at least the past 30 years, preparing tax returns as part of that business for at least the last 20 years.  He became interested in preparing tax returns after taking college courses covering the concepts of income and of deductible expenses.  He later attended some seminars and established his tax preparation business shortly thereafter.  He read books on tax laws during the first four months of his business and then began preparing tax returns through his business.  During one of his business' initial years, he maintained a second job working for a certified public accountant helping her prepare her clients' tax returns.  During some of his business' other years, he maintained a different second job, working as an accountant first for a construction company and later for a windsurfing company.

Mr. Ericson prepared approximately 700, approximately 850, and over 1,000 Federal income tax returns for his clients during 2006, 2007, and 2008, respectively.  Clients typically paid him by check, although a few who had given him "bad" checks were required to pay in cash.  Mr. Ericson usually did not

[*6] deposit his cash receipts into a bank account but instead used them to pay business expenses.

Mr. Ericson made numerous cash withdrawals from automated teller machines (ATMs) to pay individuals who worked for his sole proprietorship. He characterized most of these individuals as independent contractors, and he generally paid them in cash. He kept no formal records of his ATM or cash transactions, but for each month he characterized his ATM and cash transactions as personal or business related.

C.    Mr. Ericson's Photography Activity

Mr. Ericson is a professional photographer who photographed models, scenery, and architecture in the State of Hawaii (primarily on the Island of Maui) and in Europe. He started this activity in 2001, and the proceeds from the sale of his photographs over the next year approximated $10,000. He thereafter devoted substantial time to his photography work, especially in 2008. He paid the models whom he photographed during the years at issue.

Mr. Ericson initially sold his photographs on eBay, receiving payment through PayPal. He eventually developed a list of customers and sold his photographs directly to those customers. Mr. Ericson's customer list totaled 150 customers at its peak.

**[\*7]**  Mr. Ericson owned an old Honda Accord during 2006 and 2007 and a Ford Escort during 2008.  He sometimes used those vehicles in his photography activity, and for Federal income tax purposes he claimed deductions for that use on the basis of a standard mileage rate.  He also routinely rented convertibles and other automobiles for his photo shoots on Maui.

Mr. Ericson paid third parties to develop his film, and for Federal income tax purposes he claimed these payments as commissions and fees.  He inventoried his photographs that were printed but not sold at the end of each year.

Mr. Ericson used cameras and lenses, as well as a computer, in his photography activity.  He also rented office space and a storage locker.

Mr. Ericson deducted on his Federal income tax returns, as airfare and travel, the costs (e.g., hotels) he paid incident to his travel to take photographs.[2] His travel was primarily around Maui and to Honolulu, and in 2006 to Europe.

D.    Merchandise Activity

Mr. Ericson sold clothes (primarily aloha shirts) in 2006 and 2007, and he sold jewelry in 2008.  He generally displayed the aloha shirts in his office, and he

---

[2]For 2006, Mrs. Ericson also deducted expenses for business travel to Europe.  Petitioners, when they traveled together, apportioned their travel expenses between themselves.

[*8] mainly sold the shirts to clients when they visited his office.  Mr. Ericson sold most of his other merchandise on eBay.

Petitioners purchased from secondhand stores most of the clothes they sold.

IV.    Petitioners' Children

Petitioners had two children, a son and a daughter, during the years at issue.  For Federal income tax purposes, petitioners claimed their daughter as a dependent for each year at issue.  Petitioners claimed their son as a dependent for 2006 and 2007.

Petitioners' children sometimes worked in petitioners' sole proprietorships.  Petitioners' daughter assisted them with their clothing and jewelry businesses, including making much of the jewelry they sold.  Petitioners compensated her for her services with cash or by paying her rent or other personal expenses.  Petitioners' son performed administrative services for Mr. Ericson's sole proprietorship, and Mr. Ericson paid him by check.

Mr. Ericson and his son played golf together twice a week, and Mr. Ericson paid for these outings.  Petitioners deducted these payments on their Federal income tax returns as business expenses.  In Mr. Ericson's view, the deductions were appropriate because he and his son discussed petitioners' businesses during these outings.

**[*9]** V.    <u>Petitioners' Bank Accounts</u>

Petitioners' only bank accounts during the years at issue were a joint savings account, a joint checking account, and a few joint certificate of deposit accounts. Petitioners used their joint checking account for both personal and business purposes, typically using a debit card to draw on the account.  The checking account statements generally listed the establishments where petitioners used the debit card.  Petitioners sometimes used checks and occasionally noted thereon the expenses to which the checks related.

Mr. Ericson and his daughter also had a joint checking account during the years at issue.

VI.    <u>Petitioners' Returns</u>

A.    <u>Overview</u>

Petitioners' returns for the years at issue reported the following items:

| [*10]          Item | 2006 | 2007 | 2008 |
|---|---|---|---|
| Wages, salaries, tips, etc. | $54,764 | $61,001 | $62,322 |
| Taxable interest | 2,190 | 1,960 | 384 |
| Taxable refunds of State income taxes | 877 | -0- | 817 |
| Business income (loss) | (372) | 2,041 | 12,683 |
|   Total income | 57,459 | 65,002 | 76,206 |
| Self-employed health insurance deduction | -0- | (2,990) | -0- |
| Penalty on early withdrawal | -0- | -0- | (6) |
| One-half of self-employment tax | (735) | (721) | (1,526) |
|   Adjusted gross income | 56,724 | 61,291 | 74,674 |
| Itemized deductions | (14,160) | (12,204) | (19,068) |
| Exemptions | (13,200) | (13,600) | (10,500) |
|   Taxable income | 29,364 | 35,487 | 45,106 |
| Tax | 3,651 | 4,539 | 5,966 |
| Education credits | (198) | (360) | (250) |
| Self-employment tax | 1,470 | 1,442 | 3,051 |
|   Total tax | 4,923 | 5,621 | 8,767 |

B.     Business Income

    1.     Overview

Petitioners reported their business income on Schedules C, Profit or Loss

From Business (Sole-Proprietorship).  The Schedules C reported that the sole

proprietorships' net income or loss for each year was as follows:

| Source | 2006 | 2007 | 2008 |
|---|---|---|---|
| Mr. Ericson's sole proprietorship | $10,404 | $10,207 | $21,595 |
| Mrs. Ericson's sole proprietorship | (10,776) | (8,166) | (8,912) |
|   Net income (loss) | (372) | 2,041 | 12,683 |

[*11]    2.    <u>Mr. Ericson's Sole Proprietorship</u>

Petitioners reported that the gross receipts, expenses, and net income of

Mr. Ericson's sole proprietorship were as follows:

| Item | 2006 | 2007 | 2008 |
|---|---|---|---|
| Gross receipts | $79,640 | $91,760 | $107,450 |
| Expenses: | | | |
|   Cost of goods sold | 34,797 | 37,310 | 57,120 |
|   Advertising | 260 | 540 | -0- |
|   Car and truck | 1,882 | 4,675 | 1,029 |
|   Commission & fees | 984 | 722 | -0- |
|   Contract labor | -0- | 1,510 | -0- |
|   Depreciation | 2,358 | 877 | 870 |
|   Interest--Other | -0- | 260 | -0- |
|   Office | 987 | 1,977 | -0- |
|   Rental: | | | |
|     Vehicles, machinery, equipment | 3,220 | -0- | -0- |
|     Other business property | 11,106 | 15,137 | 14,260 |
|   Repairs & maintenance | 590 | 896 | -0- |
|   Supplies | 917 | 2,694 | 3,860 |
|   Taxes & licenses | 3,469 | 3,356 | 3,166 |
|   Travel | 2,862 | 3,961 | 942 |
|   Deductible meals & entertainment | 461 | 430 | 845 |
|   Other | 5,343 | 7,208 | 3,763 |
|     Total | 69,236 | 81,553 | 85,855 |
| Net income | 10,404 | 10,207 | 21,595 |

3.    <u>Mrs. Ericson's Sole Proprietorship</u>

Petitioners reported that the gross receipts, expenses, and net loss of Mrs.

Ericson's sole proprietorship were as follows:

| [*12]                            Item | 2006 | 2007 | 2008 |
|---|---|---|---|
| Gross receipts | $9,420 | $9,830 | $14,090 |
| Expenses: | | | |
| Cost of goods sold | 7,050 | 8,260 | 7,640 |
| Advertising | 240 | 310 | 360 |
| Car and truck | 1,304 | 1,756 | -0- |
| Commission & fees | 1,194 | 496 | 2,290 |
| Contract labor | 3,000 | 1,200 | 4,800 |
| Depreciation | -0- | 490 | -0- |
| Employee benefit programs | 1,200 | -0- | -0- |
| Office | 160 | 210 | -0- |
| Rental: | | | |
| Vehicles, machinery, equipment | -0- | -0- | 1,682 |
| Repairs & maintenance | -0- | 360 | -0- |
| Supplies | 1,281 | 784 | 722 |
| Taxes & licenses | -0- | 49 | -0- |
| Travel | 1,820 | 966 | 1,614 |
| Deductible meals & entertainment | 208 | 230 | -0- |
| Other | 2,739 | 2,885 | 3,894 |
| Total | 20,196 | 17,996 | 23,002 |
| Net loss | 10,776 | 8,166 | 8,912 |

## C.     Itemized Deductions

Petitioners claimed the following itemized deductions on their Schedules A, Itemized Deductions:

[*13]

|  | 2006 | 2007 | 2008 |
|---|---|---|---|
| Medical and dental expenses | $7,280 | -0- | -0- |
| Less: 7.5% limit | (4,254) | -0- | -0- |
| Net | 3,026 | -0- | -0- |
|  |  |  |  |
| State and Local income taxes | 3,040 | $3,303 | $3,400 |
| Other taxes | -0- | -0- | 11,405 |
| Total | 3,040 | 3,303 | 14,805 |
|  |  |  |  |
| Home mortgage interest | 5,000 | 5,000 | -0- |
|  |  |  |  |
| Gifts to charity | 370 | 980 | 1,940 |
|  |  |  |  |
| Employee business expenses | 3,829 | 4,147 | 3,816 |
| Tax preparation fees | 29 | -0- | -0- |
| Total | 3,858 | 4,147 | 3,816 |
| Less: 2% limit | (1,134) | (1,226) | (1,493) |
| Net | 2,724 | 2,921 | 2,323 |
| Total | 14,160 | 12,204 | 19,068 |

Petitioners paid the reported mortgage interest to Mr. Ericson's uncle. The mortgage was a second mortgage on petitioners' vacation home in the State of Washington.

Petitioners filed Forms 2106, Employee Business Expenses, in connection with the employee business expense deductions claimed. These deductions were claimed with respect to Mrs. Ericson's work as a nurse. The employee business expenses reflected payments that petitioners claimed they made for union dues, uniforms, and seminars related to Mrs. Ericson's work.

**[*14]** D.     Education Credits

Petitioners filed Forms 8863, Education Credits (Hope and Lifetime Learning Credits), to claim certain education credits.  Petitioners claimed education (lifetime learning) credits for 2006 and 2008 with respect to college tuition ($900 and $1,250, respectively) that they paid for their daughter.  Petitioners claimed the education (lifetime learning) credit for 2007 with respect to $1,800 of expenses related to Mr. Ericson.

VII.     Mr. Ericson's Return Preparer Clients

A.     Overview

Mr. Ericson's tax return preparation clients included Mr. and Mrs. K and Mr. and Mrs. J.[3]  Mr. Ericson prepared the joint Federal income tax returns that the Ks and the Js filed for 2007 and 2008.  Mr. Ericson prepared those returns primarily on the basis of a wide range of information that he elicited from the Ks and from the Js, as to their finances and activities, in meetings with them.  The Ks and the Js gave Mr. Ericson very few documents to support that information.

---

[3]These clients' surnames are irrelevant and we see no purpose in revealing them in this opinion.

[*15] B.   The Ks' Returns

1.   Background

The Ks each worked for a resort hotel in Hawaii during 2007 and 2008. Mr. K worked in security and Mrs. K in guest relations. Mrs. K was unemployed at the start of 2007.

Mr. Ericson met with the Ks twice with respect to each return, the first time for a consultation to enable Mr. Ericson to prepare the return and the second time for the Ks to pick up the return. Mr. Ericson questioned Mr. K at the consultation meetings concerning the Ks' financial and personal circumstances. The only documents that the Ks gave Mr. Ericson to prepare their 2007 and 2008 returns were the Forms W-2, Wage and Tax Statement, issued to them by their employer. The Ks filed their 2007 and 2008 returns after reviewing and signing them.

2.   2007 Return

a.   Overview

The Ks' 2007 return included (in relevant part) a Schedule A, a Schedule C for Mr. K, a Form 2106 for Mr. K, a Form 2106 for Mrs. K, and a Form 8863.

[*16]                    b.        Schedule A

The Schedule A reported, among other things, that the Ks paid $16,460[4] in employee business expenses, as detailed in attached Forms 2106 for Mr. K and Mrs. K listing each spouse's total employee business expenses of $6,315 and $10,145, respectively, incurred in connection with their employment.  The Forms 2106 reported the breakdown of the paid amounts as follows:

| Expense | Mr. K | Mrs. K |
|---|---|---|
| Overnight travel | $660 | $730 |
| Meals and entertainment | 870 | 1,630 |
| Less:  50% of meals and entertainment | (435) | (815) |
| Other business | 5,220 | 8,600 |
| Total | 6,315 | 10,145 |

The Ks did not provide any information or documents to Mr. Ericson concerning employee business expenses they incurred during 2007.

                    c.        Schedule C

Mr. K's Schedule C reported that his business or profession was "professional artist" and "athlete".  The Schedule C further reported that Mr. K's sole proprietorship's gross income was $4,260 (i.e., gross receipts or sales of

---

[4]The Schedule A itemized a $15,828 deduction with respect to the $16,460 (after a reduction equal to 2% of the K's adjusted gross income).

[*17] $4,620 less cost of goods sold of $360) and that its expenses totaled $24,826, resulting in a net loss of $20,566. The Schedule C further reported that Mr. K operated this sole proprietorship in a prior year. Mr. K did not advise Mr. Ericson that he had any sole proprietorship during 2007.

#### d. Form 8863

The Ks' Form 8863 reported that they were entitled to claim an $1,180 education (Hope) credit. The form reported Mrs. K as the student qualifying for the credit.

### 3. 2008 Return

#### a. Overview

The Ks' 2008 return included (in relevant part) a Schedule A, a Schedule C for Mrs. K, a Form 2106 for Mr. K, and a Form 2106 for Mrs. K. The Ks' 2008 return did not report any income or expense for Mr. K's sole proprietorship reported on the Ks' 2007 return.

#### b. Schedule A

The Schedule A reported, among other things, that the Ks paid $9,001[5] in employee business expenses, as detailed in attached Forms 2106 for Mr. and Mrs. K listing each spouse's total employee business expenses of $4,459 and

---

[5]The Schedule A itemized a $7,498 deduction with respect to the $9,001 (after a reduction equal to 2% of the K's adjusted gross income).

[*18] $4,542, respectively, incurred by them in connection with their employment.

The Forms 2106 reported the breakdown of the claimed amounts as follows:

| Expense | Mr. K | Mrs. K |
|---|---|---|
| Meals and entertainment | $810 | $685 |
| Less: 50% of meals and entertainment | (405) | (342) |
| Other business | 4,054 | 4,199 |
| Total | 4,459 | 4,542 |

The Ks never provided any information or documents to Mr. Ericson that Mr. K believed indicated that the Ks incurred any employee business expense during 2008.

### c. Schedule C

Mrs. K's Schedule C reported that she worked during the year as a "professional artist" and "sports promo". The Schedule C further reported that Mrs. K's sole proprietorship's gross income was $1,460 and that its expenses totaled $15,446, resulting in a net loss of $13,986. The Schedule C further reported that Mrs. K started this business in 2008.

### 4. Respondent's Examination of the Ks' Returns

Respondent examined the Ks' 2007 and 2008 returns. After questioning Mr. K concerning his 2007 business activity, the examiner concluded that Mr. K was not engaged in the claimed business. The examiner also disallowed the claimed employee business expense deductions.

[*19] C.    The Js' Returns

1.    Background

During 2007 and 2008 Mr. J worked primarily as general manager of a swimming pool maintenance business.  He worked in that capacity during 2007 as an employee and during 2008 as the owner of a sole proprietorship that he started that year.  Mrs. J, his then wife, was primarily a homemaker during 2007 and provided administrative assistance for Mr. J's pool maintenance business during 2008.

Mr. Ericson met with the Js twice with respect to each return.  Before preparing each return, Mr. Ericson asked the Js questions about their income-producing activities and expenses (primarily Mr. J's).  Mr. J informed Mr. Ericson that he enjoyed auto racing, that he spent a lot of money on this activity, and that he expected to profit from the activity because of the prize money that could be won.  The Js also advised Mr. Ericson that Mrs. J performed administrative duties for Mr. J's pool maintenance business during 2008, that the value of these services was $300 a month, and that Mrs. J used her personal automobile to perform some of those administrative services.  Mrs. J also advised Mr. Ericson that she took dance classes at a cost of $100 per month.

[*20]    2.    2007 Return

a.    Overview

The Js' 2007 return included (in relevant part) a Schedule C for Mr. J and a Form 8863.

b.    Schedule C

Mr. J's Schedule C reported that he worked during the year in "vehicle racing", "dance", and "sports promos".  The Schedule C reported that the sole proprietorship's gross receipts and gross income were both $2,320 and that its expenses totaled $21,578, resulting in a net loss of $19,258.  The Schedule C reported that Mr. J had conducted this activity in a prior year.

c.    Form 8863

The Js' Form 8863 claimed an education (lifetime learning) credit of $240 with respect to Mrs. J.  The form reported that the credit was claimed with respect to $1,200 of qualifying expenses.  The expenses reflected the cost of dance classes which Mrs. J took during 2007.  Mrs. J aspired to be a dance teacher, and at the time of trial she had recently started a business teaching dance.

**[*21]**     3.     <u>2008 Return</u>

     a.     <u>Overview</u>

The Js' 2008 return included (in relevant part) Schedules C for both Mr. J and Mrs. J.

     b.     <u>Schedules C</u>

Mr. J's Schedule C reported that he operated a sole proprietorship involving "pool repair", "competitive sports", and "musician". The Schedule C further reported that the sole proprietorship's gross income was $32,660 (gross receipts of $41,290 less cost of goods sold of $8,630) and that its expenses totaled $19,716, resulting in a net profit of $12,944. One reported expense was contract labor of $3,600.

Mrs. J's Schedule C reported that she operated a sole proprietorship involving "administrative" and "dance competitions". The Schedule C further reported that the sole proprietorship's gross income and receipts were both $3,600 and that its expenses totaled $2,640, resulting in a net profit of $960. The $3,600 in income was attributable to the administrative services that Mrs. J performed for Mr. J's pool maintenance business. The expenses related mainly to Mrs. J's use of her automobile in performing some of those services.

**[*22]**      4.      Respondent's Examination of the Js' Returns

Respondent examined the Js' 2007 and 2008 returns.  Respondent disallowed some expense deductions that Mr. J claimed with respect to a computer that he bought for his business.  Respondent also made an adjustment with respect to Mrs. J's reported dance expenses, the nature of which is not disclosed in the record.  The record does not reveal what further adjustments, if any, were made to the returns.

## VIII.  Examination of Petitioners' Returns

Petitioners' returns for the years at issue were examined.  Carl Van Zweden was the Internal Revenue Service (IRS) revenue agent who performed the examination.  Previously, Mr. Van Zweden had examined various returns that Mr. Ericson had prepared for clients (client returns).  Mr. Van Zweden's examination of the client returns stemmed from complaints the IRS had received from local tax practitioners concerning returns they had become aware of that Mr. Ericson prepared.  Mr. Van Zweden initially reviewed approximately 30 client returns and selected approximately 15 for examination.  Mr. Van Zweden concluded after examining the 15 client returns that they tended to have at least one questionable Schedule C and oftentimes inflated employee business expenses and unallowable education credits.

[*23] Mr. Van Zweden concluded from the examination of the approximately 15 returns that Mr. Ericson was a "problem return preparer". As a consequence, Mr. Van Zweden examined petitioners' returns for the years at issue. In the course of his examination, Mr. Van Zweden interviewed Mr. Ericson. During the interview, Mr. Ericson did not specify the manner in which petitioners kept records for their sole proprietorships. Mr. Van Zweden also requested various documents concerning the years at issue. Petitioners did not timely respond to Mr. Van Zweden's requests but at various times provided him with summary schedules that they prepared in response to the requests. Petitioners also gave Mr. Van Zweden bank and credit card statements substantiating payment of some, but not all, expenses claimed.

Mr. Van Zweden performed a bank deposits analysis to ascertain petitioners' gross receipts from their sole proprietorships. In connection with that analysis, Mr. Van Zweden also estimated Mr. Ericson's gross receipts from his tax preparation activity for each year at issue by consulting IRS records and documents regarding the number of income tax returns that Mr. Ericson prepared. Mr. Van Zweden concluded from his examination that petitioners had unexplained deposits (and thus that Mr. Ericson's sole proprietorship had unreported gross receipts) of

**[*24]** $64,905, $7,502, and $20,552 for 2006, 2007, and 2008, respectively.[6]

Respondent has since conceded that petitioners' unreported sole proprietorship income was $4,905 and $5,552 for 2006 and 2008, respectively, and that they overreported such income by $1,855 for 2007.

IX.   Notice of Deficiency

A.   Petitioners' Schedules C

Respondent issued a notice of deficiency to petitioners determining that they had unreported gross receipts in the amounts just noted ($64,905, $7,502, and $20,552 for 2006, 2007, and 2008, respectively).  The notice also disallowed most of the expense deductions that petitioners claimed with respect to their sole proprietorships, on the grounds that petitioners had failed to show that the expenses were paid or incurred or had the requisite business purpose.  The gross receipts and expenses, as reported, and the amounts of the disallowed expense deductions were as follows:

---

[6]Respondent did not make any adjustment to the gross receipts reported on the Schedules C filed for Mrs. Ericson's sole proprietorship.

[*25]

### Mr. Ericson's Schedules C

| Item | 2006 Reported | 2006 Disallowed | 2007 Reported | 2007 Disallowed | 2008 Reported | 2008 Disallowed |
|---|---|---|---|---|---|---|
| Gross receipts | $79,640 | | $91,760 | | $107,450 | |
| Cost of goods sold | 34,797 | $24,212 | 37,310 | $36,250 | 57,120 | $57,120 |
| Advertising | 260 | -0- | 540 | -0- | -0- | -0- |
| Car and truck expenses | 1,882 | 1,882 | 4,675 | 4,675 | 1,029 | 1,029 |
| Commissions & fees | 984 | 341 | 722 | 722 | -0- | -0- |
| Contract labor | -0- | -0- | 1,510 | 1,510 | -0- | -0- |
| Depreciation | 2,358 | 725 | 877 | -0- | 870 | -0- |
| Interest--other | -0- | -0- | 260 | 260 | -0- | -0- |
| Office expenses | 987 | 733 | 1,977 | 1,977 | -0- | -0- |
| Rental expenses: | | | | | | |
| Vehicles, machinery, equip. | 3,220 | 3,220 | -0- | -0- | -0- | -0- |
| Other bus. property | 11,106 | 30 | 15,137 | 5,979 | 14,260 | 2,359 |
| Repairs & maintenance | 590 | 590 | 896 | -0- | -0- | -0- |
| Supplies | 917 | 571 | 2,694 | 2,694 | 3,860 | 3,860 |
| Taxes & licenses | 3,469 | 3,469 | 3,356 | 3,356 | 3,166 | 3,166 |
| Travel | 2,862 | 2,862 | 3,961 | 3,961 | 942 | 942 |
| Deductible meals & entertainment | 461 | 461 | 430 | 430 | 845 | 845 |
| Other expenses | 5,343 | 3,540 | 7,208 | 7,208 | 3,763 | 3,763 |
| Total | 69,236 | 42,576 | 81,553 | 69,022 | 85,855 | 73,084 |
| Expense deductions allowed | | 26,660 | | 12,531 | | 12,771 |

### Mrs. Ericson's Schedules C

| Item | 2006 Reported | 2006 Disallowed | 2007 Reported | 2007 Disallowed | 2008 Reported | 2008 Disallowed |
|---|---|---|---|---|---|---|
| Gross receipts | $9,420 | | $9,830 | | $14,090 | |
| Cost of goods sold | 7,050 | $4,450 | 8,260 | $5,420 | 7,640 | $4,840 |
| Advertising | 240 | 240 | 310 | 310 | 360 | 360 |
| Car and truck expenses | 1,304 | 1,304 | 1,756 | 1,756 | -0- | -0- |
| Commissions & fees | 1,194 | 1,194 | 496 | 496 | 2,290 | 2,290 |
| Contract labor | 3,000 | 3,000 | 1,200 | 1,200 | 4,800 | 4,800 |
| Depreciation | -0- | -0- | 490 | 490 | -0- | -0- |
| Employee benefit programs | 1,200 | 1,200 | -0- | -0- | -0- | -0- |
| Office expenses | 160 | 160 | 210 | 210 | -0- | -0- |
| Rental expenses: | | | | | | |
| Vehicles, machinery, equip. | -0- | -0- | -0- | -0- | 1,682 | 1,682 |
| Repairs & maintenance | -0- | -0- | 360 | 360 | -0- | -0- |
| Supplies | 1,281 | 1,074 | 784 | -0- | 722 | -0- |
| Taxes & licenses | -0- | -0- | 49 | -0- | -0- | -0- |
| Travel | 1,820 | 1,820 | 966 | 966 | 1,614 | 1,614 |
| Deductible meals & entertainment | 208 | 208 | 230 | 230 | -0- | -0- |
| Other expenses | 2,739 | 2,739 | 2,885 | 2,885 | 3,894 | 3,894 |
| Total | 20,196 | 17,389 | 17,996 | 14,323 | 23,002 | 19,480 |
| Expense deductions allowed | | 2,807 | | 3,673 | | 3,522 |

[*26] B.    Other Income

Respondent determined for 2006 that petitioners failed to report $3,520 of income from the cancellation of debt.  Two entities reported to the IRS on Forms 1099-C, Cancellation of Debt, that they forgave debt totaling $3,520.  Respondent also determined for 2006 and 2008, respectively, that petitioners failed to report $262 of income from a State income tax refund and overreported $817 of income from a State income tax refund.  Respondent's determinations as to the State income tax refunds arose from Forms 1099-G, Certain Government Payments, filed by the Hawaii Department of Taxation.

C.    Other Items

Respondent also determined that petitioners owed additional self-employment tax of $15,772, $13,125, and $17,227 for 2006, 2007, and 2008, respectively.  Respondent correspondingly determined for those respective years that petitioners were entitled to additional self-employment tax adjustments of $7,151, $5,842, and $7,088.

Respondent further disallowed all of petitioners' claimed itemized deductions for 2006 and 2007, on the grounds that petitioners had not shown that the expenses were paid or incurred or, where relevant, had the requisite business purpose.  Respondent instead allowed the standard deductions for those years.  For

**[\*27]** 2008 respondent disallowed only miscellaneous deductions of $2,522 claimed on the Schedule A, allowing the remaining $16,546 of itemized deductions claimed.

Respondent disallowed the education credits claimed for all years at issue because, respondent determined, those credits were limited by petitioners' "modified adjusted gross income". (Respondent's adjustments to petitioners' income caused computational adjustments to their "modified adjusted gross income" reported on the returns.)

OPINION

I.     Burden of Proof

The Commissioner's determinations of deficiencies in tax as set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations wrong. See Welch v. Helvering, 290 U.S. 111, 115 (1933); see also Rule 142(a)(1).[7]

The Court of Appeals for the Ninth Circuit, to which an appeal of this case would ordinarily lie, has held that the presumption of correctness attaches to a notice of deficiency in the case of unreported income only when the Commissioner establishes a minimal evidentiary foundation demonstrating that the taxpayer

_____

[7]Petitioners have not claimed or shown entitlement to any shift in the burden of proof to respondent pursuant to sec. 7491(a).

[*28] received unreported income. See Palmer v. U.S. IRS, 116 F.3d 1309, 1312-1313 (9th Cir. 1997); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982). Once such a foundation is established, the burden shifts to the taxpayer to prove the portion of the unreported income that is not taxable. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Palmer, 116 F.3d at 1312-1313.

As to the fraud penalties, as more fully discussed infra, the burden of proof rests with respondent to demonstrate fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

II.    Sole Proprietorship Income

Gross income includes all income from whatever source derived, see sec. 61(a), and taxpayers are required to keep books and records sufficient to establish their Federal income tax liabilities, see sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); see also sec. 1.6001-1(a), (b), (e), Income Tax Regs. If a taxpayer fails to maintain adequate records, the Commissioner may determine the taxpayer's income by using the bank deposits method. See DiLeo v. Commissioner, 96 T.C. at 868. A bank deposit is prima facie evidence of income. See id. Once the Commissioner has made a prima facie case, the taxpayer bears the burden of showing that deposits made into the account

**[*29]** represent nontaxable income (e.g., deposits related to gifts, inheritances, loans, or transfers between bank accounts). See id. at 869.

Petitioners failed to maintain adequate records for the years at issue. Respondent therefore reconstructed petitioners' sole proprietorship income for those years by using the bank deposits method. On the basis of respondent's bank accounts analysis, as later adjusted to reflect additional information that petitioners gave respondent after the initial analysis, respondent asserts that petitioners failed to report $5,552 of sole proprietorship income for 2008. Petitioners offer no explanation as to why the $5,552 is not from a taxable source. We sustain respondent's determination that the $5,552 is from a taxable source (specifically, Mr. Ericson's sole proprietorship) and that the $5,552 is includible in petitioners' taxable income for 2008.

III.    Sole Proprietorship Expenses

Section 162(a) entitles a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Under that section, an expenditure is deductible if it is: (1) an expense, (2) an ordinary expense, (3) a necessary expense, (4) paid (in the case of a cash method taxpayer) or incurred (in the case of an accrual method taxpayer) during the taxable year, and (5) made to carry on a trade or business. See Commissioner

**[*30]** <u>v. Lincoln Sav. & Loan Ass'n</u>, 403 U.S. 345, 352-353 (1971); <u>Lychuk v. Commissioner</u>, 116 T.C. 374, 386 (2001). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any claimed deduction. See <u>INDOPCO Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). This burden includes substantiating the amount and purpose of each expense claimed as a deduction, <u>see</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001), and maintaining records relating to the expense, <u>see</u> sec. 6001.

Taxpayers aiming to deduct expenses for (among other things) travel, entertainment, and the use of a vehicle also must meet strict substantiation rules set forth in section 274(d). <u>See</u> sec. 274(d); <u>see also</u> sec. 280F(d)(4)(A)(i). These rules require that a taxpayer substantiate, by adequate records or by other sufficient evidence corroborating his or her own statement, each of the following elements: (1) the amount of an expense; (2) the time and place the expense was incurred; (3) the business purpose of the expense; and (4) in the case of entertainment expenses, the business relationship to the taxpayer of the person entertained. <u>See</u> sec. 274(d); <u>see also</u> sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Adequate records for this purpose require that the taxpayer provide (1) an account book, a log, or a similar record and (2) documentary

[*31] evidence (e.g., receipts, paid bills, or similar evidence), which together are sufficient to establish each element of an expenditure. See sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Section 274(d) supersedes the general rule of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), which allows the Court to estimate an expense where the record is insufficient to establish the specific amount of the expense, and precludes the Court from estimating a taxpayer's expenses subject to the strict substantiation requirement. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); see also sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

Respondent disallowed petitioners' deductions of $92,564 in sole proprietorship expenses for 2008 (i.e., $73,084 from Mr. Ericson's sole proprietorship plus $19,480 from Mrs. Ericson's sole proprietorship). We sustain this disallowance because petitioners failed to offer evidence that showed their entitlement to any of the claimed deductions. While respondent concedes that petitioners' sole proprietorships are valid businesses, and we consider it reasonable to assume petitioners in conducting those businesses incurred many deductible expenses, petitioners have left us with an insufficient evidentiary basis to conclude that they are entitled to any deduction in an amount greater than respondent

[*32] allowed.  See Sparkman v. Commissioner, 509 F.3d 1149, 1159 (9th Cir. 2007) (noting that taxpayers bear the burden of "clearly showing" their right to a claimed deduction), aff'g T.C. Memo. 2005-136.  Nor do we consider it appropriate to estimate any additional deductible expense under Cohan, and as applicable here.  Edelson v. Commissioner, 829 F.2d 828, 831-832 (9th Cir. 1987), aff'g T.C. Memo. 1986-223.  The Cohan rule, as trumped by the strict substantiation regulations, does not allow us to estimate petitioners' expenses for entertainment, travel, and meals, and the record does not allow us to comfortably estimate any of petitioners' other claimed expense deductions in greater amounts than respondent allowed.  See also Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991) (stating that, under the Cohan rule, a court "may not be compelled to guess or estimate * * * even though such an estimate, if made, might have been affirmed" (alteration in original) (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957))), aff'g in part, rev'g in part on another ground T.C. Memo. 1989-390.

IV.    Employee Business Expenses

Respondent disallowed petitioners' deduction of $3,816 in employee business expenses for 2008.  Petitioners claimed the employee business expense deductions with respect to Mrs. Ericson's work as a nurse.  Although we do not

[*33] consider it unreasonable to conclude that Mrs. Ericson's work as a nurse required that she pay for seminars, uniforms, and membership in a union, the record does not establish (and we decline to find) that petitioners did in fact pay these expenses or, even if they did, the specific or approximate amounts of the expenses. We sustain respondent's determination on this matter in full for reasons similar to those set forth in our discussion of petitioners' sole proprietorship expenses.

## V.    Fraud and Accuracy-Related Penalties

Respondent determined that both petitioners are liable for section 6663 fraud penalties for each year at issue. In relevant part, section 6663 provides:

SEC. 6663. IMPOSITION OF FRAUD PENALTY.

(a) Imposition of Penalty.--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

(b) Determination of Portion Attributable to Fraud.--If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

We may sustain respondent's determinations of fraud only if respondent proves clearly and convincingly that (1) petitioners underpaid their tax and (2) at

[*34] least some part of each underpayment was due to fraud (two-prong test).  See

sec. 7454(a); Rule 142(b); Estate of Trompeter v. Commissioner, 279 F.3d 767,

773 (9th Cir. 2002), vacating and remanding on other grounds T.C. Memo. 1998-

35 supplemented by 111 T.C. 57 (1998); see also Parks v. Commissioner, 94 T.C.

654, 663-664 (1990) (noting that the Commissioner must clearly and convincingly

prove both prongs of the two-prong test).  "Clear and convincing evidence is that

measure or degree of proof which will produce in the mind of the trier of facts a

firm belief or conviction as to the allegations sought to be established.  It is

intermediate, being more than a mere preponderance, but not to the extent of such

certainty as is required beyond a reasonable doubt as in criminal cases.  It does not

mean clear and unequivocal."  Ohio v. Akron Ctr. for Reprod. Health, 497 U.S.

502, 516 (1990) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

Where, as here, respondent determined that both petitioners are liable for the fraud

penalty for multiple years, respondent must prove his fraud determinations

separately for each year and each petitioner.  See Estate of Stein v. Commissioner,

25 T.C. 940, 959-963 (1956), aff'd sub nom. Levine v. Commissioner, 250 F.2d

798 (2d Cir. 1958).

    We decide first whether respondent adequately proved that petitioners both

had the requisite fraudulent intent for each year at issue.  A fraudulent intent is

**[\*35]** present if petitioners filed their tax returns for the years at issue intending to conceal, mislead, or otherwise prevent the collection of tax that they knew was owed. See Spies v. United States, 317 U.S. 492, 499 (1943); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), aff'g T.C. Memo. 1983-249; Conforte v. Commissioner, 692 F.2d 587, 592 (9th Cir. 1982), aff'g in part, rev'g in part on other grounds 74 T.C. 1160 (1980); Rowlee v. Commissioner, 80 T.C. at 1123. A fraudulent intent may be proven by circumstantial evidence because direct proof of a taxpayer's intent is rarely available, see Rowlee v. Commissioner, 80 T.C. at 1123; Beaver v. Commissioner, 55 T.C. 85, 92 (1970); and reasonable inferences may be drawn from the relevant facts, see Spies, 317 U.S. at 499; Akland v. Commissioner, 767 F.2d at 621; Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984). Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case. See DiLeo v. Commissioner, 96 T.C. at 874.

Courts usually rely on certain indicia (or badges) of fraud in deciding whether a taxpayer had the requisite fraudulent intent. The badges of fraud include: (1) understated income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) implausible or inconsistent explanations of behavior;

**[*36]** (5) concealing income or assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) dealing in cash; (9) failing to make estimated tax payments; and (10) filing false documents. See Estate of Trompeter v. Commissioner, 279 F.3d at 773; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); see also Spies, 317 U.S. at 499-500. These badges of fraud are nonexclusive. See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). The taxpayer's education and business background are also relevant to the determination of fraud. See id.

Respondent argues that "[m]ost significantly, petitioner James A. Ericson's methodology in preparing his clients' returns demonstrates a pattern of conduct which infers [sic] a clear intent to mislead. In preparing tax returns for his clients, petitioner James A. Ericson consistently fabricated various schedules and forms that had no factual basis." Respondent points to the Ks' and the Js' returns for 2007 and 2008 as support for this argument. Respondent asserts that Mr. Ericson prepared those returns to report the results of sole proprietorships that never existed. Respondent asserts that Mr. Ericson also prepared the Ks' returns to report employee business expenses for which the Ks did not provide Mr. Ericson any information. Respondent concludes that Mr. Ericson's preparation of the Ks'

[*37] and the Js' 2007 and 2008 returns "was part of a consistent pattern of preparing returns for clients that included fabricated or inflated schedules", that "[t]his pattern of conduct is indicative of * * * [Mr. Ericson's] clear intent to deceive or mislead the respondent with regard to his clients' tax returns", and that "[a] strong inference arising from this pattern of conduct is * * * [Mr. Ericson's] intent to deceive or mislead regarding his own income tax returns." Respondent also discusses some of the badges of fraud as further support for his determinations of fraud. The badges of fraud upon which respondent relies are understated income, failure to maintain adequate books and records, dealing in cash, providing implausible or inconsistent explanations of behavior with an intent to mislead, failing to provide documents to respondent during the audit, and Mr. Ericson's knowledge and experience as a tax return preparer.

We begin our analysis with respondent's "most significant" indicia of fraud; i.e., his claim that Mr. Ericson's preparation of the Ks' and the Js' tax returns for 2007 and 2008 establishes a clear, consistent pattern of fraudulent conduct. We do not agree that the record establishes the proffered pattern of fraudulent conduct. Respondent had more than the customary three years to examine petitioners' tax returns for two of the years at issue, yet he has opted to rest his assertions of a consistent pattern of fraudulent conduct on only four of the over 2,500 Federal

[*38] income tax returns that Mr. Ericson prepared for his clients for the years at issue. See Avenell v. Commissioner, T.C. Memo. 2012-32, 103 T.C.M. (CCH) 1180, 1181 (2012) (noting that the Commissioner failed to build the requisite record to prove fraud, although he had an extraordinarily long period of time to do so). The four client returns do not clearly and convincingly lead to a finding that petitioners' returns are tainted by fraud.

Petitioners objected at trial to respondent's offer of information concerning the preparation of the client returns. That information was admitted over petitioners' objection. Evidence of an individual's crimes, wrongs, or other acts is generally not admissible to prove the character of the individual to show action in conformity therewith. See Fed. R. Evid. 404(b). Such evidence is generally admissible, however, to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See id. The Court of Appeals for the Ninth Circuit views rule 404(b) of the Federal Rules of Evidence as a "rule of inclusion", see United States v. Ayers, 924 F.2d 1468, 1472-1473 (9th Cir. 1991), and has held that evidence of other acts is admissible under that rule where the evidence (1) proves a material issue in the case, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time, see United States v. Ramirez-Robles, 386 F.3d 1234,

[*39] 1242 (9th Cir. 2004); see also Sherrer v. Commissioner, T.C. Memo. 1999-

122, 77 T.C.M. (CCH) 1795, 1804-1805 (1999), aff'd, 5 F. App'x 719 (9th Cir.

2001).

The probative value of the four returns and their preparation is weak,

however, when viewed in the light of Mr. Van Zweden's testimony that he

discerned a consistent pattern of fraudulent conduct from his belief that the client

returns had at least one improper Schedule C and sometimes inflated employee

business expenses and unallowable education credits.[8] We acknowledge that the

Ks' returns tend to confirm such a pattern. The record establishes that upon

examination the purported business reflected on Mr. K's Schedule C for 2007 was

found to be essentially fictitious. Likewise the employee business expense

deductions claimed by Mr. and Mrs. K for 2007 and 2008 were disallowed (and

they are quite improbable on their face, given the Ks' occupations). Yet the record

---

[8]In reaching our conclusion concerning the probative value of the client
returns that are in evidence, we are mindful that in February 2015 a U.S. District
Court permanently enjoined Mr. Ericson from acting as a paid Federal tax return
preparer. See United States v. Ericson, No. 13-00551 (D. Haw. filed Oct. 23,
2013) (orders of Feb. 20, 2015, and Nov. 30, 2014). The District Court granted
summary judgment on most of the Government's claims, and a permanent
injunction, on the basis of considerably more extensive proof concerning
Mr. Ericson's return preparer activity. See id. That additional activity is not a part
of the record in this case, and we reach our decision on the basis of the record
before us.

**[*40]** is also incomplete, as there is no evidence concerning whether Mrs. K's claimed Schedule C business for 2008 was found during the examination to be fictitious.[9]

By contrast, the Js' returns tend to rebut the pattern that respondent would have us find. The evidence does not persuade us that the Schedules C the Js filed for each year were for fictitious businesses and therefore evidence of fraudulent intent--certainly not under a clearly and convincingly standard. The Schedule C Mr. J filed for 2007 reported the sole proprietorship's business as including "vehicle racing". Given the undisputed testimony that Mr. J had advised Mr. Ericson that he engaged in auto racing at considerable expense but that sizable monetary awards could be won, we are not persuaded that the Schedule C reported a fictitious business. The Schedule C may instead have represented an aggressive claim (given the section 183 restrictions on the deduction of losses from activities not engaged in for profit) that Mr. J's auto racing activities constituted a trade or business engaged in for profit, the losses of which could be deducted. On this record it is impossible to say more, but a fictitious business has not been clearly and convincingly shown. Nor, it should be added, does the record establish that

---

[9]Presumably, statutory notices of deficiency were issued to the Ks for 2007 and 2008. Such documents might have clarified the nature of the examination adjustments, but they are not in the record.

[*41] respondent disallowed any deductions arising from that Schedule C.[10]  The evidence surrounding the Js' claim of an education credit for 2007 is also muddled, as Mrs. J paid for dance classes at an institution not revealed in the record and the record does not establish whether respondent in fact disallowed the credit.

As for the Schedule C Mr. J filed for 2008, there is undisputed evidence that at least some portion of the business activity reflected thereon was not fictitious; namely, that Mr. J conducted a pool maintenance business as a sole proprietor during 2008, the results of which were reflected on his Schedule C.  Certainly respondent has not clearly and convincingly shown otherwise.  Similarly, the nonfictional nature of the Schedule C Mrs. J filed for 2008 finds support in her testimony to the effect that she provided administrative assistance to her husband's pool maintenance business during 2008 and was compensated for those services in an amount that was treated as gross receipts on her Schedule C.  Whether in these circumstances it was proper for Mr. Ericson to treat Mrs. J's income as reportable on a Schedule C is beside the point; what matters is that Mrs. J's undisputed testimony precludes a finding that respondent has clearly and convincingly shown that Mr. Ericson caused a Schedule C for a fictitious business to be filed on Mrs. J's behalf.

---

[10]As is the case with the Ks, any notices of deficiency that may have been issued to the Js for 2007 and 2008 are not in the record.

**[*42]** In short, the evidence surrounding the 2007 and 2008 returns that Mr. Ericson prepared for the Js does not support the pattern that respondent would have us find. There is substantial evidence that the businesses reflected on the Js' Schedules C were <u>not</u> fictitious, the circumstances concerning the education credit are muddled, there is no evidence concerning the extent to which the examining agent actually disallowed any of the Schedule C or education credit claims, and the Js' returns did not claim any employee business expense deductions. Consequently, we conclude that respondent has not clearly and convincingly shown that Mr. Ericson exhibited a pattern of preparing returns with Schedules C for fictitious businesses, inflated employee business expenses, and invalid education credit claims.

We also take into account that petitioners' returns for the years at issue are outside of the mold of the fraudulent conduct described by Mr. Van Zweden. While Mr. Van Zweden testified that he discerned a pattern of fraudulent conduct in the client returns on the basis of illegitimate Schedules C, respondent agrees that the sole proprietorships reported on petitioners' Schedules C were legitimate businesses. In addition, while Mr. Van Zweden testified that he further discerned a pattern of fraudulent conduct evidenced by invalidly claimed education credits, respondent did not determine (1) that petitioners failed to pay or substantiate the

[*43] expenses underlying their claimed education credits, (2) that the expenses failed to qualify for the education credits, or (3) that petitioners failed to meet any of the other requirements for the education credits. Instead, respondent determined that petitioners' claiming of the education credits was computationally limited to zero because of upward adjustments that respondent made to petitioners' income. While respondent also determined that petitioners' employee business expenses were inflated because of a lack of substantiation and the inability to show the requisite business purpose, we decline to find that this fact standing alone establishes the fraudulent pattern of conduct that respondent seeks to establish.

We turn to analyze the badges of fraud, giving no regard to respondent's claimed pattern of fraudulent conduct. The presence of several badges is persuasive circumstantial evidence of fraud. See Beaver v. Commissioner, 55 T.C. at 93.

1.    Understating Income

Understating income may reflect a fraudulent intent. See Bradford v. Commissioner, 796 F.2d at 307. An understatement of income can be accomplished by an overstatement of deductions as well as by an omission of income. See Gould v. Commissioner, 139 T.C. 418, 446-447 (2012), aff'd, 552

[*44] F. App'x 250 (4th Cir. 2014); Estate of Temple v. Commissioner, 67 T.C. 143, 161 (1976).

Respondent asserts that petitioners failed to report income for 2006 and 2008, and we agree at least with respect to 2008. Petitioners also claimed deductions the disallowance of which we sustain, which results in a further understatement of income. All the same, however, we disagree with respondent's view that petitioners' understatements of income necessarily lead to a conclusion that petitioners intended to evade Federal income tax. Instead, it appears that the understatements may have been due to petitioners' filing of their tax returns without maintaining adequate records. See Knutsen-Rowell, Inc. v. Commissioner, T.C. Memo. 2011-65, 101 T.C.M. (CCH) 1293, 1305 (2011).

2.    Maintaining Inadequate Records

Lack of records may reflect fraudulent intent. See Bradford v. Commissioner, 796 F.2d at 307.

Respondent finds fraud in the fact that petitioners produced few contemporaneous records during the examination and were unable to reconcile their records to their returns. Respondent also finds fraud in the fact that petitioners lacked a formal recordkeeping system. Petitioners reply that their bank and credit card statements support most of the amounts deducted on their returns.

[*45] To be sure, petitioners failed to maintain adequate contemporaneous records for their sole proprietorships.[11] We disagree with respondent's position, however, that petitioners' failure to maintain adequate records was with the requisite intent to evade Federal income tax. Rather, as previously indicated, petitioners' failure to maintain adequate records may have been the result of their negligent or reckless behavior. See Knutsen-Rowell, Inc. v. Commissioner, 101 T.C.M. (CCH) at 1305. This case is not one in which a taxpayer reported expenses attributable to a fictitious business. Respondent agrees that the sole proprietorships which petitioners reported were legitimate businesses, that those businesses generated income, and (to a limited extent) that those businesses incurred valid business expenses. Moreover, petitioners eventually produced documentation disproving most of respondent's determinations of unreported income and produced other records (mainly bank and credit statements and later some summary schedules) supporting their payment of expenses. Petitioners failed, however, to produce the source documents underlying their records, and they failed to produce any other

---

[11]Mr. Ericson and his son each testified that petitioners lost their accounting records when Mr. Ericson's computer crashed after the years at issue. We decline to find on the basis of the credible evidence in the record that petitioners maintained their accounting records on a computer, or that the computer later crashed. The Court invited Mr. Ericson to offer into evidence any document prepared contemporaneously with the examination wherein he made the claim that his computer had crashed. Petitioners presented the Court with no such document.

[*46] reliable documentation supporting their payment of the disallowed expenses. The fact that petitioners did not substantiate the reported expenses for which respondent disallowed deductions does not necessarily mean (as respondent would have us conclude) that petitioners inflated those expenses with an intent to avoid Federal income tax.

### 3.    Failing To File Tax Returns

Failing to file tax returns may reflect fraudulent intent.  See Bradford v. Commissioner, 796 F.2d at 307.

Petitioners filed a tax return for each year at issue.

### 4.    Implausible or Inconsistent Explanations of Behavior

Giving implausible or inconsistent explanations of behavior may reflect fraudulent intent.  See id.

Respondent finds fraud in the fact that Mr. Ericson testified that he lost his records when his computer failed.  Respondent asserts that this testimony reflects an implausible or inconsistent explanation of behavior that leads to a finding of fraud.  We rejected this testimony, as discussed above, and take this into account in deciding whether respondent has met his burden of proving fraud for each year at issue.

[*47] 5.    Concealing Income or Assets

Concealing assets may reflect fraudulent intent.  See id.

Petitioners have not concealed any asset.  Respondent initially determined that petitioners had unreported Schedule C gross receipts from Mr. Ericson's return preparer business of $64,905, $7,502, and $20,552 for 2006, 2007, and 2008, respectively.  However, after reviewing information petitioners provided, respondent now asserts, and we agree, that petitioners failed to report $5,552 of sole proprietorship income for 2008 (and respondent asserts that petitioners failed to report $4,905 of sole proprietorship income for 2006).  We do not find that this more modest amount of unreported income evidences fraudulent intent.  Rather, bearing in mind the additional fact that respondent now concedes that petitioners overreported their sole proprietorship income for 2007 by $1,855, we conclude that the unreported income is attributable to petitioners' negligence in failing to maintain adequate records for purposes of filing their returns.

6.    Failing To Cooperate With Tax Authorities

Failure to cooperate with tax authorities may reflect fraudulent intent.  See id.

Respondent asserts that petitioners' response to respondent's request to view their records, petitioners' explanation underlying their claimed deductions, and

**[*48]** petitioners' failure to reconcile their summary schedules to their returns evidence a failure to cooperate with tax authorities which leads to a finding of fraud. We disagree.

While Mr. Ericson did not fully cooperate with Mr. Van Zweden's requests during the examination, Mr. Ericson did honor Mr. Van Zweden's request for an interview and repeatedly provided Mr. Van Zweden with documents and with answers. While it appears that Mr. Ericson may have made some inconsistent and implausible statements to Mr. Van Zweden during the examination, we are not persuaded on the basis of the record as a whole that Mr. Ericson consciously did so to hinder the examination. See Knutsen-Rowell, Inc. v. Commissioner, 101 T.C.M. (CCH) at 1305-1306. Nor are we persuaded that petitioners' failure to reconcile their summary schedules to their returns was part of a plan to evade Federal income tax. We note that Mr. Ericson informed Mr. Van Zweden during the examination that Mr. Ericson was suffering from a significant health problem.

7.    Engaging in Illegal Activities

Engaging in illegal activities may reflect fraudulent intent, as may an attempt to conceal those activities. See Bradford v. Commissioner, 796 F.2d at 308.

Petitioners have not engaged in any illegal activity. Nor have they tried to conceal an illegal activity. While respondent essentially asserts that Mr. Ericson

[*49] engaged in an illegal activity concerning the preparation of tax returns for his clients, we conclude that respondent has not established that on this record.

    8.    <u>Dealing in Cash</u>

A taxpayer's insistence that income be paid in cash may reflect fraudulent intent, as may a taxpayer's dealing in cash to avoid the scrutiny of the taxpayer's finances. See <u>Spies</u>, 317 U.S. at 499-500; <u>Bradford v. Commissioner</u>, 796 F.2d at 308.

Respondent finds fraud in the fact that Mr. Ericson sometimes received cash payments for his services, that he used that cash directly to pay expenses (as opposed to depositing the cash in his bank account), and that he sometimes withdrew cash from his bank account to pay expenses. We do not find similarly.

Mr. Ericson's sole proprietorship was generally not a cash business in that his clients typically paid him by check. Although Mr. Ericson sometimes demanded that a client pay him in cash, the demand was driven by the legitimate business reason that Mr. Ericson did not want to receive another "bad" check from the client. We do not find that Mr. Ericson's demand to be paid in cash stemmed from an intent to evade Federal income tax.

Nor do we find fraud in the fact that Mr. Ericson sometimes paid expenses in cash. The cash payment of expenses is less troublesome than the receipt of income

[*50] in cash.  Business expenses generally reduce taxable income, and taxpayers typically want to document and report all of their expenses to minimize their taxable income.  Income received in cash, on the other hand, is more likely not to be documented or reported by a taxpayer aiming to evade tax.  The desire to inflate expenses paid in cash, as opposed to deflating income received in cash, is also controlled by the requirement that expenses be adequately substantiated to be properly deducted.  We do not find a significant underreporting of cash receipts to convince us clearly that Mr. Ericson's practice not to deposit his cash receipts into his bank account, but instead to use the receipts to pay business expenses, was done with an intent to avoid tax.

9.    Failing To Make Estimated Tax Payments

Failing to make required estimated tax payments is indicative of fraud.  See Bradford v. Commissioner, 796 F.2d at 308.

The record does not establish that petitioners failed to make any required estimated tax payment.

10.    Filing False Documents

Filing false documents, such as a form to evade the withholding of Federal income tax, is indicative of fraud.  See Recklitis v. Commissioner, 91 T.C. at 911.

[*51] The record does not establish that petitioners filed any false document related to the filing of their tax returns for the years at issue.

    11.    <u>Other Considerations</u>

Respondent argues that Mr. Ericson's education and sophistication are circumstantial factors establishing fraud. To that end, respondent asserts, Mr. Ericson is a sophisticated tax preparer with a master's degree. Respondent also notes that Mr. Ericson worked as an accountant, that he worked for a certified public accountant, and that he prepared thousands of tax returns during a period of more than 20 years.

We disagree with respondent's view that Mr. Ericson's education, his work as an accountant, and his profession as a tax preparer lead to a finding of fraud. First, the record does not persuade us that Mr. Ericson is the sophisticated tax preparer that respondent makes him out to be. Mr. Ericson had minimal education on the preparation of income tax returns before he started his return preparation business, and we do not find that his preparation of tax returns for his clients strengthened his understanding of the tax law to any significant extent. In fact, the record establishes to the contrary that Mr. Ericson is misguided in his understanding of many areas of tax law, including, for example, the requirements that taxpayers maintain records for their businesses and maintain sufficient

[*52] documents to support their claims to deductions.[12]  Second, even if

Mr. Ericson was sufficiently knowledgeable with respect to tax law, we are not

persuaded, as discussed above, that petitioners' failure to maintain the requisite

records was part of a plan to conceal, mislead, or otherwise prevent the collection

of tax.

Respondent also finds fraud in the fact that petitioners claimed deductions

for "seemingly" personal items, such as expenses incurred at gas stations,

restaurants, and grocery stores, and claimed other deductions for amounts paid to

or for the benefit of their children.  We disagree.  The fact that an expenditure may

seem personal does not necessarily mean that the expenditure fails to be a business

expense.  The deductibility of an expense also does not necessarily turn on the

identity of the payee.

12.   Conclusion

On the basis of our detailed review of the facts and circumstances of this

case, together with our analysis of the factors mentioned above and the other

considerations discussed, we conclude that respondent has not clearly and

---

[12]We recognize that we find that Mr. Ericson took some college courses discussing the concepts of income and deductions, that he attended some seminars, and that he read some books on tax law.  The record does not establish the specifics of the seminars that Mr. Ericson attended following his college studies or the matter covered in those seminars.  Nor does the record establish the breadth of his college courses or the specifics concerning the books that he read on tax law.

[*53] convincingly proven that either petitioner filed any return for the years at issue intending to conceal, mislead, or otherwise prevent the collection of tax. While respondent may have a strong suspicion that petitioners filed their returns for these years with the requisite fraudulent intent, such a suspicion of fraud (to the extent it exists) is not enough to establish fraud clearly and convincingly. See King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992). We hold that petitioners are not liable for the fraud penalties for any of the years at issue.

## VI. Negligence

Section 6662(a) imposes a 20% penalty on that portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations. See also sec. 6662(b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including a failure to keep adequate books and records and/or to substantiate items properly. See sec. 6662(c); see also sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also has been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), aff'g 92 T.C. 1 (1989). The term "disregard" indicates any careless, reckless, or intentional disregard. See sec. 6662(c).

**[*54]** The Commissioner bears the burden of production as to the applicability of an accuracy-related penalty. See sec. 7491(c). To satisfy his burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner has met his burden of production, the burden of proof remains on the taxpayer, including the burden of proving that a penalty is inappropriate. See id. at 446-447.

Respondent has met his burden of production in that he has established that petitioners failed to maintain adequate records for their sole proprietorships and failed to substantiate their reported expenses for 2008. Petitioners advance no specific argument as to why they are not liable for the accuracy-related penalty for negligence for 2008. We sustain respondent's determination on this matter.

VII.   Conclusion

We have considered all arguments that the parties made for holdings contrary to those that we reach herein and, to the extent not discussed, we have rejected those arguments as without merit.

In order to reflect the foregoing,

Decision will be entered under

Rule 155.